[Civ. No. 32448. Second Dist., Div. One. Jan. 29, 1969.]

EMANUEL LEVY et al., Plaintiffs and Appellants, v. STANLEY L. ROSS et al., Defendants and Respondents.

Bernard Reich and Frank B. Belcher for Plaintiffs and Appellants.

Saul J. Bernard and William B. Murrish for Defendants and Respondents.

KINCAID, J. pro tem.*—Plaintiffs appeal from the judgment herein only as it applies to the second, third, fourth and fifth causes of action of their third amended complaint.

The first cause of action was against defendant Capital Unlimited, Inc. only and after trial by court, judgment was rendered in the sum of $194,500, plus attorneys' fees of $5,000. No appeal is taken therefrom.

The second cause seeks to hold defendants Stanley Ross, Harold Ross and Sam Wishnow, individually, for the sum of $63,250, together with interest and attorneys' fees, on said defendants' written guarantees dated June 4 and August 1, 1963, set forth in full hereinafter. Judgment was entered thereon against said defendants in the sum of $2,750 only, plus interest from July 1, 1964.

The third cause is against all defendants and seeks damages for alleged conspiracy to defraud.

The fourth cause is directed against Stanley and Harold Ross and Wishnow and purports to set forth an action for damages for fraud and deceit arising out of misrepresentations made on or about May 28, 1964, in order to induce plaintiffs to forbear collection of the basic indebtedness.

The fifth cause of action against all defendants realleges the third and fourth causes, and charges a conspiracy and concealment of assets, and seeks both compensatory and punitive damages.

Viewing the evidence, as we must, most favorably in support of the court's findings herein the record discloses and, in effect, the court found that plaintiffs owned all of the stock of (old) La Mirada Bowl, Inc., a California corporation. The corporation was in the process of building and completing a bowling alley and had a lease with La Mirada Business Properties, Inc. for the operation thereof.

On October 29, 1958, the parties executed an agreement whereby the plaintiffs agreed to sell all of the authorized and outstanding stock of La Mirada Bowl, Inc. to the defendants Stanley L. Ross, Harold M. Ross and Sam Wishnow for $275,000, plus a sum equal to cash paid by the plaintiffs to the corporation for stock, as follows: $47,000 cash, $20,000 cash, and a note in the amount of $255,000, payable in installments

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

of $2,750 each quarter. The agreement provided that the La Mirada Bowl, Inc. corporation would be dissolved and a new corporation organized to which all of the assets would be distributed. Defendants had the right to assign the agreement of October 29, 1958, and all rights and obligations thereunder to the new corporation and upon such assignment, the defendants would be released from the obligations.

On January 1, 1959, plaintiffs delivered all the stock for the $20,000 cash and a promissory note in the amount of $252,250. A new corporation named Capital Unlimited, Inc. was organized by the defendants. The plaintiffs acquired 10 percent of the stock of the new corporation in accordance with an option provided for in the October 29, 1958, agreement. All the assets and liabilities were conveyed by the defendants to the new corporation. The defendants thereafter were relieved of the personal obligations in the basic agreement.

Capital Unlimited, Inc. took over operations on January 1, 1959, and continued to operate the same until May 1963, when the stock in the corporation was sold to Duarte Sports Center, Inc. for $150,000. Plaintiffs sold their stock in Capital Unlimited, Inc. to the said purchaser for $10,000.

Duarte Sports Center, Inc. continued the operation of the bowling alley from May 1963, to May 1964. Duarte Sports Center, Inc. defaulted in its obligations on May 7, 1964, and on May 28, 1964, the Capital Unlimited, Inc. stock was foreclosed on by the defendants. The trustee and escrow holder of Capital Unlimited, Inc. in May 1964, caused the stock to be sold at the request of the defendants and it was purchased by the defendants Stanley L. Ross, Harold M. Ross and Sam Wishnow for $3,000.

The assets of Capital Unlimited, Inc. were seized by the government for failure to pay taxes that accrued during the period the bowling alley was being operated by Duarte Sports Center, Inc. and the same were sold at a tax sale in July 1964. Mannie Feigenbaum, acting as agent for the defendants Stanley L. Ross, Harold M. Ross and Sam Wishnow, acquired the assets at the foreclosure sale for $12,500 of which $4,000 was paid to the federal government for taxes and $8,000 paid to the county government for taxes. Said defendants advanced $20,000 to Mannie Feigenbaum for the purchase.

The stock owned in Capital Unlimited, Inc. by the plaintiffs was purchased previously by Duarte Sports Center, Inc. for $10,000 which sum was paid to the plaintiffs.

The assets acquired at the tax sale were transferred to a

new corporation organized on August 5, 1964, the defendant La Mirada Bowl, Inc. Shares of this stock totaling 21,320 were sold at $1.00 per share and additional loans totaling $55,650 were made to the new corporation to supply new capital to continue the operation of the bowling alley business. The new corporation was dominated and controlled by the defendants Ross, Ross and Wishnow. It was continued until February 1966, at which time it finally closed.

No stock was actually issued by (new) La Mirada Bowl, Inc. and there were no meetings of the Board of Directors or the stockholders.

Principal in the amount of $57,750 was paid on the original note, leaving a balance owing of $194,500 by Capital Unlimited, Inc.

The said agreement of October 29, 1958, was between the plaintiffs and Stanley L. Ross, Harold M. Ross and Sam Wishnow. Paragraph 7 provided that the parties could organize a new corporation and transfer all of the assets acquired by the agreement to the new corporation, and paragraph 14 thereof further provided that upon the assignment by the defendants to the new corporation, all of the rights and the obligations of the defendants would be assumed thereafter by the corporation. Consequently, when the rights and obligations were assigned to Capital Unlimited, Inc. there were no further obligations remaining with the individual defendants. The agreement specifically provided that they were to be released from all rights and obligations.

On June 4, 1963, the defendants advised the plaintiff by letter that the stock of Capital Unlimited, Inc. would be sold to Duarte Sports Center, Inc. Previous negotiations between the defendants and the plaintiffs established that the stock was being sold to the new corporation because Capital Unlimited, Inc. had not been successful in its operation of the bowling alley. The plaintiffs likewise sold their 1,000 shares of stock for $10,000. In paragraph 2 of the said letter agreement, the individual defendants guaranteed and promised to pay each installment of principal and interest from the date thereof, being June 4, 1963, to and including the installment due April 30, 1969. It further provided that in the event Duarte Sports Center, Inc. defaulted on the terms of its payments and the defendants instituted action to force the sale of the Capital Unlimited, Inc. stock, the guarantee provisions therein would end 90 days after defendants' commencement

of the action to secure a sale of the stock rather than the date of April 30, 1969.

On August 1, 1963, plaintiffs wrote to defendants Ross, Ross and Wishnow that defendants had advised them they were compelled to revise their agreement with Duarte whereby they agreed to reduce their down payment to $25,000 from $40,000, the deficiency to be deposited with the corporation. That, in response to the request of said defendants that plaintiffs consent to accept $5,000 cash and a $5,000 note in place of $10,000 cash, plaintiffs will accommodate them on the following terms and conditions: "to which you agree by signing and returning the tissue copy and promissory note: 1. Following receipt by us of the $10,000 plus interest from the Escrow, we will lend you $5,000 on your promissory note in the form enclosed. 2. To clear up a possible ambiguity in Paragraph 2 of our agreement of June 4, 1963, that paragraph is hereby amended so as to add the following: 'In no event, however, shall our guaranty terminate before the last installment of principal or interest due us from Duarte.' 3. You will provide me forthwith with a copy of any amendments and/or revisions of the agreement or escrow instructions with Duarte.''

The court thereupon specifically found as follows: The basic agreement provided for the assignment to a new corporation and contained no provisions for a personal guarantee.

The June 4, 1963, letter agreement provides in effect that if Duarte Sports Center, Inc. operates the bowling alley under the terms of the sale agreement, the defendants agree to guarantee the payments until April 30, 1969. If Duarte Sports Center, Inc. should default and the defendants reacquire the stock or cause it to be sold, the parties revert to the original agreement and the defendants' guarantee is only for the 90-day period from the date action to reacquire the stock is commenced. The agreement of August 1, 1963, added the further provision that in no event is the guarantee to terminate before the last installment of principal and interest is due from Duarte Sports Center, Inc. The terms of the alleged personal guarantee are conflicting and are not sufficiently clear or certain to provide an enforceable personal guaranteed agreement.

Operation of the bowling alley was never a successful venture by any of the parties involved. A tax sale was a realistic conclusion to the unsuccessful operation of the business. There is no evidence of a conspiracy to defraud or cheat the plaintiffs by purchasing the assets at the tax sale. The additional evidence of new capital being invested into the acquiring cor-

poration for the purpose of attempting successfully to operate the business would negative any theory of a fraudulent conveyance to escape payment of the plaintiff creditors. If the venture had proven successful and the defendants had profited from such manipulations, it is conceivable that a theory of a fraudulent conveyance could be realized. However, in the absence of successful results, evidence of a fraudulent conveyance is lacking. There was no successful period of operation by the plaintiffs, Capital Unlimited, Inc., Duarte Sports Center, Inc. or La Mirada Bowl, Inc.

There is a personal guarantee for the one installment of $2,750 by the defendants Stanley L. Ross, Harold M. Ross and Sam Wishnow, jointly, due July 1, 1964. The defendants offered to pay this installment so that legal proceedings were unnecessary to collect this and consequently no attorneys' fees are allowed for this amount.

The court thereupon concluded that plaintiffs are entitled to judgment under their second cause of action against defendants Ross, Ross and Wishnow only for the one guaranteed installment of $2,750 with interest at 6 percent per annum from July 1, 1964. The court further concluded that as to their third, fourth and fifth causes of action the plaintiffs were entitled to recover nothing.

Plaintiffs do not challenge the findings of fact herein but seek a reversal on questions of law alone. They are: Are the defendants Ross, Ross and Wishnow personally liable in the sum of $64,250 under their written guarantees of June 4, 1963, and August 1, 1963? Did the defendants Ross, Ross and Wishnow fail to tender the one installment of $2,750 due July 1, 1964, so that legal proceedings were necessary to collect this, permitting attorneys' fees under the agreements? Are all of the defendants liable under the fraud counts? Did the trial court commit numerous errors which had the cumulative effect of depriving plaintiffs of a fair trial?

As noted, the trial court found that the terms of the alleged personal guarantee are conflicting and are not sufficiently clear or certain to provide an enforceable personal guaranteed agreement. In the light of the record herein we agree that the terms of the respective guarantees are conflicting but we are unable to agree that they are so conflicting, uncertain and unclear as to prevent the trial court, under proper rules, from ascertaining and applying the true intent of the parties with reference thereto.

An appellate court is not bound by a construction of

the contract based solely upon the terms of the written instrument without the aid of evidence. (*Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825].)

As said in *Bank of America* v. *Waters,* 209 Cal.App.2d 635, 638 [26 Cal.Rptr. 9]: "Contracts of guaranty, like all other contracts, should receive a fair and liberal interpretation according to the true import of their language and may be explained by reference to the circumstances under which they were made and the matter to which they relate, the main object being to ascertain and effectuate the intention of the parties." (See *Bloom* v. *Bender,* 48 Cal.2d 793, 803 [313 P.2d 568].)

An ambiguity in the guarantee agreement exists when, in the light of the circumstances surrounding the execution of the instrument, the written language is susceptible of two or more constructions. Under the application of this general principle, extrinsic evidence of the circumstances under which the agreement was made may be considered by the court in ascertaining what the parties meant by the words used in the agreement. (*Estate of Russell,* 69 Cal.2d 200, 212, 213 [70 Cal.Rptr. 56, 444 P.2d 353].)

Rather than nullifying the terms and effect of the agreement of guarantee by refusing interpretation of the intent of the parties, the trial court had the duty to fully examine all the circumstances under which it was made in order to ascertain and effectuate the intention of the parties.

Plaintiffs next complain of the following finding by the court: There is a personal guarantee for the one installment of $2,750 by the defendants Stanley L. Ross, Harold M. Ross and Sam Wishnow, jointly, due July 1, 1964. The defendants offered to pay this installment so that legal proceedings were unnecessary to collect this and consequently no attorneys' fees are allowed for this amount.

The record discloses support for the second sentence of this finding in that defendants, in advance of the trial, and in their pretrial statement, offered payment of the one guaranteed installment of $2,750 in full of their liability pursuant to the letters of June 4 and August 1, 1963. If on retrial it be determined that only this one payment is due under the guarantee agreement the offer of payment is sufficient upon which to deny allowance of attorneys' fees.

The letter agreement of June 4, 1963, includes the following paragraph: "7. In any litigation arising under or by reason of this agreement, the prevailing party shall have his costs,

including reasonable sums for attorneys' fees.''

If the court, on retrial, shall determine that more than the one $2,750 payment is due plaintiffs under the guarantee agreement, reasonable attorneys' fees should be allowed consistent with this provision.

 Plaintiffs next contend that all of the defendants are liable for alleged fraud under their third and fifth causes of action and the defendants Stanley and Harold Ross and Wishnow under their fourth cause of action.

As heretofore noted plaintiffs rely on questions of law alone for reversal of the judgment as to these causes. They particularly point to the acquisition of the bowling alley equipment at a tax sale as constituting actionable fraud.

The trial court, however, on conflicting evidence, found that operation ''of the bowling alley was never a successful venture by any of the parties involved. A tax sale was a realistic conclusion to the unsuccessful operation of the business. There is no evidence of a conspiracy to defraud or cheat the plaintiffs by purchasing the assets at the tax sale. The additional evidence of new capital being invested into the acquiring corporation for the purpose of attempting successfully to operate the business would negative any theory of a fraudulent conveyance to escape payment of the plaintiff creditors. If the venture had proven successful and the defendants had profited from such manipulations, it is conceivable that a theory of a fraudulent conveyance could be realized. However, in the absence of successful results, evidence of a fraudulent conveyance is lacking.'' We find nothing in the record herein which compels a reversal of these findings as a matter of law.

The rules here applicable are stated in *Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557] : ''It must be remembered that the trial court was face to face with the witnesses and had the opportunity to judge, from their demeanor on the stand and their manner of testifying, which of those giving positive testimony were worthy of credence. As has so frequently been said, it is the general rule that on appeal an appellate court (1) will view the evidence in the light most favorable to the respondent; (2) will not weigh the evidence; (3) will indulge all intendments and reasonable inferences which favor sustaining the finding of the trier of fact; and (4) will not disturb the finding of the trier of fact if there is substantial evidence in the record in support thereof. [Citations.] It is not the province of the reviewing court to analyze conflicts in the evidence. [Citation.] Rather, when a

240

finding of fact is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence contradicted or uncontradicted, which will uphold the disputed finding."

We have considered the other points advanced by plaintiffs on this appeal and consider them without substantial merit.

The judgment is affirmed as to the third, fourth and fifth causes of action and is reversed as to the second cause of action.

Wood, P. J., and Lillie, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied March 26, 1969. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.