[Civ. No. 54267. First Dist., Div. Two. May 31, 1984.]

HARVARD INVESTMENT COMPANY, Plaintiff and Respondent, v. THE GAP STORES, INC., Defendant and Appellant.

**COUNSEL**

Neil E. Falconer and Steinhart & Falconer for Defendant and Appellant.

Pillsbury, Madison & Sutro, Harlan M. Richter, Michael H. Salinsky and Sarah G. Flanagan for Plaintiff and Respondent.

---

**OPINION**

**ROUSE, J.**—Defendant The Gap Stores, Inc. (The Gap) appeals from a judgment in favor of plaintiff Harvard Investment Company (Harvard) in an action against The Gap for waste and breach of a lease agreement.

The facts necessary to the disposition of this appeal are undisputed.[1] Harvard bought a building in which The Gap was a tenant. Sometime after The Gap vacated the premises, Harvard sued it for waste and breach of the lease. Harvard prayed for more than $400,000 in actual damages. Harvard also sought attorney's fees pursuant to a clause in the lease agreement that provided that if either party sued the other on the lease, "the losing party shall pay the successful party a reasonable sum for attorneys' fees . . . ." Prior to answering the complaint, The Gap made an offer of judgment, pursuant to section 998 of the Code of Civil Procedure, of $65,000.[2] Harvard rejected this offer. The Gap then answered the complaint, denying all liability and also seeking its attorney's fees. Discovery commenced and the lawsuit continued. The case was to be tried on December 15, 1980. On December 5, 1980, The Gap made a second offer of judgment, this time for $125,000, inclusive of all costs and attorney's fees. Again Harvard rejected the offer. After a continuance, the trial began on February 23, 1981, and lasted for 13½ days. On March 20, 1981, the court filed an intended decision, finding in favor of Harvard for $131,669 ($81,669 for actual damages and $50,000 in attorney's fees). On April 6, 1981, The Gap filed a request for findings of fact and conclusions of law on three specific issues, only two of which figure in this appeal:

"1. (a) The value of attorneys' fees incurred by plaintiff for services rendered on those issues upon which plaintiff was successful, and (b) the value of attorneys' fees incurred by plaintiff for services rendered on those issues as to which plaintiff was not successful.

---

[1]In the words of appellant's opening brief, "[t]he present appeal does *not* relate to the merits of the trial court's disposition of the main issues in the case. Defendant The Gap was content, indeed well satisfied, with that disposition."

[2]Section 998 of the Code of Civil Procedure provides, in pertinent part: "(c) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment, the plaintiff shall not recover his costs and shall pay the defendant's costs from the time of the offer."

"Said allocation is necessary by reason of defendant's contention that plaintiff is not entitled to recover attorneys' fees for services rendered on those issues as to which plaintiff was not successful.

"2. (a) The value of attorneys' fees incurred by plaintiff for services rendered during the period ending on December 5, 1980, and the value of attorneys' fees incurred by the plaintiff for services rendered during the period commencing on December 6, 1980, to the conclusion of the trial, and (b) the allocation of the Court's allowance of attorneys' fees to plaintiff as between said two periods.

"Said allocation is necessary by reason of the fact that on December 5, 1980, defendant served upon plaintiff a Statutory Offer of Judgment pursuant to § 998 of the Code of Civil Procedure."

Harvard objected to this request for findings. On April 16, 1981, the court entered judgment in accordance with its intended decision. In addition, the court denied The Gap's request for findings. After entry of judgment, The Gap filed a motion to vacate the judgment on grounds that the court's failure to make the requested findings rendered the judgment defective. The Gap renewed its request for the findings and also moved for various orders amending the judgment. First, on the theory that Harvard did not recover more than The Gap's statutory offer of $125,000, The Gap sought an order under section 998 of the Code of Civil Procedure that (1) limited Harvard's awardable costs to those incurred up to the date of the offer, and (2) granted The Gap the costs which it incurred after the date of the offer. Second, on the theory that The Gap was the "successful party" within the meaning of the fee clause in the lease from the date that Harvard rejected The Gap's offer, The Gap sought an order awarding it the attorney's fees that it incurred from the date of Harvard's rejection. Third, on the theory that the fee clause permitted the recovery of fees by the successful party on an issue-by-issue basis, The Gap sought fees which were incurred from the commencement of the action with respect to the issues on which it prevailed at trial. The court denied The Gap's motions "for the reasons set forth in [Harvard's] opposition (filed 4/9/81)," namely, (1) that a request for findings on fewer than all material issues is unauthorized and unlawful and therefore must be denied; and (2) assuming that limited findings are proper, the specific findings requested need not be made because they did not involve material issues. The Gap here contends that the court erred when it denied its request for findings on certain specified issues.

██ ██ At the time of The Gap's request, section 632 of the Code of Civil Procedure provided, in pertinent part:[3] "Where findings are re-

---

[3]Although both parties agree that section 632 has changed (see Stats. 1981, ch. 900, § 1, p. 3425), they disagree concerning the meaning of the change. Section 632 now provides,

quired, they shall fairly disclose the court's determination of *all* issues of fact in the case." (Italics added.)

Also at this time, rule 232(e) of the California Rules of Court provided, in pertinent part: "Findings shall fairly disclose the court's determination of *all* issues of fact material to the judgment in the case and shall be concisely and chronologically stated whenever practicable."[4] (Italics added.)

■ ■ ■ ■ From this authority, it appears that the trial court concluded that, if a court intends to issue findings, it must make findings on *all* material issues;[5] further, that a party can *only* request findings on *all* material issues. Thus the court denied The Gap's request because, in its view, such request invited the court to commit error by making incomplete findings.

■ This unfortunate application of the rules exalted the allegedly defective form of The Gap's request over its legitimate substance. Clearly, The Gap sought findings of some sort; however, because it asked for findings on only *some* and not *all* issues in the case, the court treated its request as a nullity, as if no request had been made at all. Even assuming the validity

---

in pertinent part: "Upon the request of any party appearing at the trial, made within 10 days after the court announces a tentative decision, or if the trial has lasted less than one day, made prior to submission of the matter for decision, the court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial. *The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision.*" (Italics added.)

The Gap contends that section 632 now clearly permits a court to make findings on less than all of the material issues in a case. We agree.

The plain language of the statute, common sense, and judicial economy strongly support The Gap's interpretation. Section 632 expressly requires that a party specify the issues on which it seeks findings. We assume that the inclusion of this requirement was not an idle act or a superfluous enactment (see *Stafford* v. *Realty Bond Service Corp.* (1952) 39 Cal.2d 797, 805 [249 P.2d 241]); rather, that the Legislature intended that it have meaning and effect. (See *People* v. *Collins* (1969) 273 Cal.App.2d 1, 4 [77 Cal.Rptr. 741].) Since the statute expressly requires that a party specify issues, we conclude that a court may make findings on only those issues specified, i.e., on fewer than all the material issues. To so construe section 632 is logical and makes sense. (See *Lambert* v. *Conrad* (1960) 185 Cal.App.2d 85, 96 [8 Cal.Rptr. 56].)

[4]This requirement is no longer set forth in rule 232.

[5]Although the rule seems plausible in light of the versions of section 632 and rule 232(e) which applied at the time of The Gap's request, we can find no cases holding that the failure of a court to make findings on *all* material issues is per se reversible error regardless of whether the "missing" findings are relevant or necessary to the resolution of the case. Indeed, we note that courts have no duty to make findings on every matter on which evidence is received at trial. (*Placentia Fire Fighters* v. *City of Placentia* (1976) 57 Cal.App.3d 9, 27 [129 Cal.Rptr. 126].) Moreover, it has been held that the failure to make findings on material issues is not reversible error when the missing findings may be reasonably inferred from the other findings or when the missing findings would necessarily have been adverse to the appellants. (*McAdams* v. *McElroy* (1976) 62 Cal.App.3d 985, 996 [133 Cal.Rptr. 637].)

of the rules divined by the court, it does not follow from them that a party who "erroneously" requests limited findings is therefore not entitled to *any* findings. Under these circumstances, it would have been appropriate for the court to have treated The Gap's limited request as a request for findings on *all* issues. Doing so would have provided The Gap with the only findings it really wanted and also would have protected the court from the error of failing to make a requested finding. (Cf. *Chapple* v. *Big Bear Super Market No. 3* (1980) 108 Cal.App.3d 867, 873-874 [167 Cal.Rptr. 103] [where a finding on a material issue is requested, a judgment rendered in the absence of such a finding is reversible].) In this connection, we note that, in its opposition to The Gap's requested findings, Harvard asked that the request be denied, but alternatively suggested that the court make findings on *all* issues. █ ██ We believe that, at the very least, the court should have permitted The Gap to amend its request to ask for findings on all issues.[6] All things considered, we conclude that the court's summary denial of The Gap's request was error. Whether such error constitutes a basis for reversal of the court's judgment depends on whether the findings requested by The Gap involved material issues.

As noted, The Gap requested that the court make findings concerning what part of the $50,000 attorney's fee award represented fees for services rendered to Harvard up to December 5, the date of the statutory offer. This request was based upon the contention that section 998 was applicable.

Under section 998 of the Code of Civil Procedure, if Harvard's actual recovery was less than The Gap's December 5 offer of $125,000, then (1) The Gap would be liable for only the *pre*-offer costs incurred by Harvard; and (2) Harvard would be liable for the *post*-offer costs incurred by The Gap. (See *Shain* v. *City of Albany* (1980) 106 Cal.App.3d 294, 297-298 [165 Cal.Rptr. 69].) Superficially, it appears that section 998 was inapplicable, and, therefore, that the court properly denied The Gap's request for a finding. The face of the judgment shows that Harvard recovered $131,669, $6,669 more than The Gap's offer. The Gap contends, however, that despite

---

[6]On appeal, The Gap argues that the court found that The Gap had waived its right to findings by making an unlawful request for limited findings. Harvard denies that the court based its denial on a waiver theory. However, Harvard claims that, in fact, the court could have found that The Gap waived its right to findings. Given the circumstances of this case, we conclude that The Gap could not have waived its right to findings. First, section 632 stated, "findings . . . may be waived by consent in writing . . . or by oral consent in open court . . . and shall be deemed waived by a party by failure to appear at the trial." The Gap did not consent to waive findings nor did it fail to appear at trial. Second, a waiver of rights generally involves a clear, voluntary, intentional, and knowing expression. (See 30 Cal.Jur.3d, Estoppel and Waiver, § 21 and cases cited therein.) The record reflects that The Gap did not express a waiver of *all* findings, but only those which it did not need. Finally, it is illogical to hold that a request for a few findings constitutes a waiver of any findings.

this appearance, Harvard did not obtain a judgment more favorable than its $125,000 offer.

■ The Gap points out that, in determining whether a party has obtained a more favorable judgment, the court must exclude from the total recovery the costs incurred *after* the offer was made. The rationale for this rule was stated by the court in *Bennett* v. *Brown* (1963) 212 Cal.App.2d 685, 688 [28 Cal.Rptr. 485]:[7] "We believe that the Legislature enacted section 997 of the Code of Civil Procedure for the purpose of encouraging the settlement of litigation without trial. The section was designed to give a defendant the right to offer to allow judgment to be taken against him for a specified amount and to provide that if the plaintiff did not accept said offer he could not recover any costs incurred after the date of the offer if he failed 'to obtain a more favorable judgment.' To determine whether a plaintiff has recovered a more favorable judgment costs incurred after the offer has been received must be excluded. If not, the portion of section 997 denying plaintiff his costs becomes meaningless. [¶] It is true, as respondent contends, that one must look to the judgment in order to determine whether it is more favorable than the offer of settlement. . . . [W]hen you have a cause of action seeking damages only and the verdict of the jury is less than the offer of settlement plus costs incurred to that time, the judgment is not more favorable and the rule of section 997 must be applied. [¶] If the rule were as contended by the respondent and all costs incurred could be included in determining whether the recovery was more favorable than the offer of settlement, then a plaintiff could in many instances by costs alone insure a more favorable judgment. Such result would defeat the purpose of the section and does not comport with the decisions of the decided cases. (See *Douthitt* v. *Finch* [1890] 84 Cal. 214 [24 P. 929]; *Robinett* v. *Brown* [1914] 167 Cal. 735 [141 P. 368].)"

The Gap urges us to adapt and apply this rationale to the circumstances of this case. It notes that $50,000 of the total judgment represents the award for attorney's fees that were incurred both before *and after* the offer. The Gap argues that, in determining the applicability of section 998 (i.e., whether Harvard obtained a more favorable judgment), the court, following *Bennett* v. *Brown, supra,* 212 Cal.App.2d 685, should exclude that part of the

---

[7] *Bennett* v. *Brown, supra,* dealt with section 997 of the Code of Civil Procedure, which was later repealed and replaced by section 998. (See Stats. 1971, ch. 1679, §§ 1 & 3, p. 3605.) Section 998 was amended in 1977. (Stats. 1977, ch. 458, § 1, p. 1513.) However, the part of section 998 pertinent to this appeal is virtually identical to former section 997. Moreover, courts have cited cases which construed former section 997 as authority when dealing with its successor section 998. (See, e.g., *Shain* v. *City of Albany, supra,* 106 Cal.App.3d 294, 297-300; *Brown* v. *Nolan* (1979) 98 Cal.App.3d 445, 451-452 [159 Cal.Rptr. 469].)

$50,000 fee award that represents fees incurred after the December 5 offer. We agree.

Just as the inclusion of *costs* incurred after an offer is made defeats the purpose of section 998, so would the inclusion of *damages* incurred after the date of an offer. This is especially so when those postoffer damages are attorney's fees incurred in continuing the litigation after the offer. For example, in this case, if $30,000 of the total fee award represents the fees incurred for services rendered to Harvard up to December 5, then Harvard's judgment was really for $111,669, and only by litigating the case *after* the offer was Harvard able to generate more fees (damages) and thereby insure a judgment more favorable than The Gap's $125,000 offer. Clearly, the application of the *Bennett v. Brown* rationale is appropriate under the present circumstances.

We hold, therefore, that where a judgment includes attorney's fees awarded pursuant to a contractual fee clause, the court must exclude that part of the fee award which represents services performed *after* a statutory offer is made when it determines whether the provisions of section 998 of the Code of Civil Procedure are applicable. Such a rule clearly promotes the purpose and policy behind that section. It encourages settlement; it discourages litigation aimed solely at insuring an award greater than a statutory offer; and it penalizes a plaintiff who fails to accept what, in retrospect, is seen to have been a reasonable offer. (See *Shain v. City of Albany, supra,* 106 Cal.App.3d 294, 299; *Brown v. Nolan, supra,* 98 Cal.App.3d 445, 449; *Distefano v. Hall* (1968) 263 Cal.App.2d 380, 385 [69 Cal.Rptr. 691] [construing former § 997]; *Bennett v. Brown, supra,* 212 Cal.App.2d 685, 688 [construing former § 997].)

■ After The Gap made its statutory offer of December 5, and after the court issued its intended decision, The Gap was entitled to a determination of whether the cost shifting mechanism of section 998 was applicable. Given our holding, The Gap's requested finding was both material and essential to that determination. Therefore, we find that the court's failure to make this finding was reversible error. (Cf. *Chapple v. Big Bear Super Market No. 3, supra,* 108 Cal.App.3d 867, 873-874.)

■ For yet another reason, The Gap requested findings concerning the amounts of the attorney's fee award attributable to pre- and postoffer legal services. It claimed that, because Harvard failed to obtain a more favorable judgment after the December 5 offer, The Gap was, in reality, the successful party thereafter. Therefore, The Gap argues, it was entitled to its attorney's fees after December 5 pursuant to the fee clause.

■ In addition, The Gap sought findings that determined who the successful party was on an issue-by-issue basis. This request was based upon its contention that, under the terms of the fee clause, each party was entitled to fees for the services rendered in litigating those issues that it won and conversely neither party was entitled to fees for services rendered on issues that it lost.

The court denied the request for such findings because there was no basis to support The Gap's interpretation of the fee clause. We conclude that the court's refusal to make these particular requested findings was proper.

The fee clause in the lease agreement provided: "19.6. Costs of Suit. [¶] (a) If Tenant or Landlord shall bring *any action* for any relief against the other, declaratory or otherwise, arising out of this Lease, including any suit by Landlord for the recovery of rent or possession of the Premises, *the losing party* shall pay *the successful party* a reasonable sum for attorneys' fees which shall be deemed to have accrued on the commencement of such action and shall be paid whether or not such action is prosecuted to judgment." (Italics added.)

■ ■ Underlying each of The Gap's requested findings is a different interpretation of what "the successful party" means in the fee clause. To The Gap, the fee clause contemplated more than one successful party. According to its theory, there was a successful party before and after its offer of judgment, and there was a successful party on each and every issue and item of damage litigated. Both of these interpretations have a common aspect, namely, they contradict the court's interpretation of the fee clause and its findings that (1) Harvard was *the* successful party, and (2) only Harvard was entitled to fees.

The court rendered judgment in favor of Harvard and awarded it attorney's fees. From the judgment we can infer that the court found (1) that the fee clause contemplated one successful party in the action, and (2) that because Harvard won on both of its causes of action, it was the successful party, entitled to fees.

The threshold question, then, is whether the court erred as a matter of law by failing to adopt The Gap's interpretation of the fee clause.

■ The parties' intention as it was expressed through the words they used is the source of their rights under the fee clause. (See *Pacific Gas and E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 39 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373].) With respect to the words used, the court must view them in their ordinary and popular sense,

unless there is evidence that the parties intended to use them in a unique sense or to give them some different, specialized meaning. (See *Moss Dev. Co.* v. *Geary* (1974) 41 Cal.App.3d 1, 9 [115 Cal.Rptr. 736].)

 ██ Here, the fee clause refers to "*the* losing party" paying reasonable attorney's fees to "*the* successful party" in "any *action*" based on the lease agreement. (Italics added.) The plain and ordinary meaning of this language is that, in an action between the parties involving this lease, there will be *one* successful party and *one* losing party for the purposes of awarding attorney's fees.

In *Distefano* v. *Hall, supra,* 263 Cal.App.2d 380, plaintiff was awarded damages and attorney's fees in an action on a contract with a fee provision similar to that in this case. It read: " 'Should either party hereto bring suit in court to enforce the terms hereof, it is agreed that the losing party shall pay to the successful party his costs and reasonable attorneys' fees.' " (*Id.,* at p. 385.) Not unlike The Gap's contentions here, the defendants in *Distefano* contended that "since plaintiff's original complaint was for $128,458.05, but was by the time of the second trial brought down to a figure of $39,382.58, and resulted in a judgment of only $12,559.96, they were 'successful' pursuant to [the fee clause] and, therefore, entitled to attorneys' fees." (*Ibid.*)

Given the language of the fee clause, the court rejected the defendants' contention and found it unnecessary under the terms of the fee clause to probe beneath the judgment in favor of the plaintiff to determine who the successful party "really" was. The court cited numerous cases supporting the proposition that, under the "successful party" type fee provisions, "the party recovering the net judgment is the successful party entitled to attorney's fees." (*Distefano* v. *Hall, supra,* 263 Cal.App.2d 380, 387.)[8]

---

[8]Section 1717 of the Civil Code validates contractual attorney's fees provisions where, as here, they provide that the prevailing (i.e., successful) party in an action on the contract shall be entitled to recover reasonable attorney's fees. (*Presley of Southern California* v. *Whelan* (1983) 146 Cal.App.3d 959, 960-961 [196 Cal.Rptr. 1].) Assuming, arguendo, that section 1717 applies in this case, we find that it supports the trial court's determination regarding fees. When the decision below was rendered, section 1717 expressly defined "prevailing party" as the party "in whose favor final judgment is rendered." Clearly, the trial court's awards of fees to Harvard alone was consistent with section 1717 as it then provided. Since the time of the trial court's decision, section 1717 has been amended so as to delete the definition of "prevailing party." That section now provides that upon notice and motion, the trial court is required to determine who is the prevailing party. Section 1717 now gives the trial courts wide discretion in determining which party "prevailed." (*Smith* v. *Krueger* (1983) 150 Cal.App.3d 752, 756-757 [198 Cal.Rptr. 174].) Absent a clear abuse of discretion, such determination will not be disturbed on appeal. (*Ibid.*) The expansion of the trial court's discretion, however, did not invalidate the previous definition;

 In this case, Harvard sued The Gap on two causes of action. The Gap denied all liability. Harvard prevailed on both of its causes of action, and the court rendered judgment in its favor. In light of *Distefano v. Hall, supra,* we find the court's implicit finding that Harvard was "the successful party" to be reasonable, proper, and entirely consistent with the language of the fee provision. Separate subsidiary battles of proof with respect to individual items of alleged damage do not alter the fact that Harvard won the action and under the plain meaning of the fee clause was entitled to fees. We conclude that the court's interpretation of the fee clause was not erroneous as a matter of law.

The Gap cites numerous cases in which courts, faced with unique factual, procedural, and legal circumstances, adopted equitable approaches to attorney's fees awards, rather than basing them simply on who won the final judgment or on a rigid application of the fee clauses.[9] On the basis of these cases, The Gap urges us to construe its meaning of "the successful party" into the fee clause for equitable reasons. Doing so, The Gap states, will discourage "overreaching litigants" and "unreasonable litigation" and promote "justice" and "common sense."

The circumstances of this case are clearly distinguishable from the cases cited, hence we decline the invitation to add, by interpretation, what the parties could have, but failed to include, in the fee clause. (Cf. *A.B.C. Distrib. Co.* v. *Distillers Distr. Corp.* (1957) 154 Cal.App.2d 175, 185 [316 P.2d 71].) Because the fee clause is not ambiguous or vague, we find its meaning in the plain and ordinary sense of the words used, as did the court below.

---

rather, it simply eliminated its binding effect on the court's determination. We conclude that the trial court acted well within its discretion when the judge determined that Harvard was the only prevailing party (see *Krueger* v. *Bank of America* (1983) 145 Cal.App.3d 204, 217 [193 Cal.Rptr. 322]); also that its determination was consistent with the current version of section 1717.

[9]See, e.g., *Ecco-Phoenix Electric Corp.* v. *Howard J. White, Inc.* (1969) 1 Cal.3d 266 [81 Cal.Rptr. 849, 461 P.2d 33]; *International Industries, Inc.* v. *Olen* (1978) 21 Cal.3d 218 [145 Cal.Rptr. 691, 577 P.2d 1031] [where the court used equitable principles to guide its application of section 1717 of the Civil Code (which makes contractual fee provisions reciprocal) and held that if one party voluntarily dismisses its action, the other is *not* entitled to its attorney's fees as the prevailing party]; *Levy* v. *Ross* (1969) 269 Cal.App.2d 231 [74 Cal.Rptr. 622] [where the defendant in advance of trial offered payment of a guaranteed installment so that legal proceedings were unnecessary to collect it, the court stated that no attorneys' fees should be allowed to plaintiff for litigating this particular installment]; *National Computer Rental, Ltd.* v. *Bergen Brunswig Corp.* (1976) 59 Cal.App.3d 58 [130 Cal.Rptr. 360] [where defendant tendered payment on plaintiff's first claim, a second claim was not litigated, and defendant prevailed on the third and only claim litigated at trial, the court properly found that defendant was entitled to fees as the prevailing party despite the fact that plaintiff received judgment on the undisputed first claim].

We recognize, of course, that courts may be guided by equitable principles when awarding attorney's fees (*International Industries, Inc.* v. *Olen, supra,* 21 Cal.3d 218, 223-224), in part because such awards involve the careful exercise of the court's discretion. (*Melnyk* v. *Robledo* (1976) 64 Cal.App.3d 618, 623-624 [134 Cal.Rptr. 602].) Moreover, we note that equitable considerations may properly influence the court's construction and application of a fee clause that is uncertain and could lead to oppressive results if literally applied. (See, e.g., *Ecco-Phoenix Electric Corp.* v. *Howard J. White, Inc., supra,* 1 Cal.3d 266.) However, under the circumstances of this case, the court's failure to apply The Gap's interpretation of "the successful party" did not produce an oppressive result and cannot be considered error as a matter of law.

It is interesting to note that to a certain degree the court's fee award did reflect the equitable interpretation urged by The Gap. As earlier noted, The Gap contended that, under the fee clause, a party was not entitled to fees for litigating issues which it did not win. Although the court rendered judgment in favor of Harvard, it nevertheless found that Harvard had not proved all of the items of damages which it had alleged in its complaint. Indeed, it appears that Harvard proved fewer than half of them. Appropriately, the court granted Harvard only half of its estimated attorney's fees. Doing so was fully consistent with The Gap's interpretation of the fee clause.

Since we have concluded (1) that the court's interpretation of the fee clause was reasonable and not erroneous as a matter of law, and (2) that the court did not err in failing to construe the fee clause according to The Gap's interpretation, we find that the court's refusal to make the requested findings concerning who the successful party was on an issue-by-issue basis and on a pre- and postoffer basis was proper and did not constitute reversible error. Such findings were not material to the court's interpretation of the fee clause and would have been inconsistent with and contradictory to the judgment.

*Disposition*

To the extent that it purports to award attorney's fees and costs, the judgment is reversed and the matter remanded to the trial court in order to make the following factual and legal determinations and enter judgment accordingly: (1) the amount of the $50,000 fee award attributable to services rendered to Harvard before and after the December 5, 1980, offer of judgment; (2) the applicability of section 998 of the Code of Civil Procedure, in light of the above finding; and (3) if section 998 is found to be applicable, a reallocation of allowable costs between the parties pursuant to the provisions

of section 998 of the Code of Civil Procedure, the applicable case law, and the opinions expressed herein.

Kline, P. J., and Smith, J., concurred.

A petition for a rehearing was denied June 26, 1984, and the opinion was modified to read as printed above.