Filed 7/24/15  Marriage of Gallegos CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of BRITTANY AMBER and LAUDENTE GALLEGOS III. | |
| | D065839 |
| BRITTANY AMBER GALLEGOS, | |
| Respondent, | (Super. Ct. No. DN176309) |
| v. | |
| LAUDENTE GALLEGOS III, | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County,

Harry L. Powazek, Judge.  Affirmed.

Law Offices of Tritt & Tritt and James F. Tritt for Appellant.

No appearance for Respondent.

Laudente Gallegos III appeals from a protective order under the Domestic

Violence Prevention Act (Fam. Code, § 6300 et seq.) (DVPA).  (Undesignated

statutory references are to the Family Code.)  He contends the trial court erred in:

(1) utilizing an incorrect standard to issue the order, (2) issuing the order without a finding of past abuse, (3) naming the parties' two daughters (the children) as protected persons, and (4) failing to comply with the statement of decision process. We reject Laudente's arguments and affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

Laudente and Brittany Amber Gallegos were married for approximately three years. They separated in August 2013. In October 2013, Brittany requested that the trial court issue a domestic violence restraining order against Laudente, asking that the order protect her and the children. Brittany claimed that a month earlier, Laudente had grabbed her, threw her to the ground, and forced her to orally copulate him while he videotaped the incident.

At the evidentiary hearing on Brittany's request for the restraining order, Laudente testified that the video depicted him and Brittany "engaging in consensual oral copulation." However, Brittany stated that the video did not depict the entire incident because it did not start until after Laudente had physically assaulted her. She testified that when she refused Laudente's request for oral sex, he restrained her by grabbing her and pinning her to the ground with his knees. Brittany unsuccessfully tried to get Laudente off of her but eventually performed oral sex on him feeling she had no choice.

In a sworn declaration in support of her request for a restraining order, Brittany stated that Laudente "repeatedly told [her] that if [she] got pregnant he would throw

2

[her] down the stairs to cause a miscarriage or [her] death." A Family Court Services counselor reported that Brittany had stated Laudente had previously "pushed her down the stairs, chocked [*sic*] her during intimate contacts and forced her to have sexual relations." At the evidentiary hearing, Brittany denied having told the Family Court Services counselor that Laudente had pushed her down the stairs when she was pregnant.

Brittany also testified that Laudente had a drinking problem and often got drunk. He neglected their children by failing to supervise them. Brittany also stated that she was concerned for the physical safety of her children. On one occasion, Laudente spanked their daughter so hard that it left a mark that stayed on her all day. Further, Laudente was abusive to Brittany's dog on numerous occasions. Laudente repeatedly punched the dog and threw it outside.

After considering the evidence, the trial court issued the restraining order for a period of one year. In making its ruling, the court stated its decision "most likely would have been different had [Brittany's] burden of proof been other than a preponderance of the evidence." However, Brittany met her burden of proof showing Laudente's "pattern of conduct including issues of substance and verbal abuse has resulted in a reasonable fear for her personal safety." In regard to the oral copulation video, the court noted that it was "problematic in that it began during the act and does not reflect what occurred prior as [Brittany] ha[d] testified. The [video] does not support [Brittany's] claim of a sexual assault."

3

## DISCUSSION

### I. *Mootness*

The protective order in this case expired on its own terms on February 3, 2015. Thus, we requested letter briefs from the parties addressing whether the appeal should be dismissed as moot. Laudente argues this Court should consider the merits of his appeal because the restraining order continues to damage him as it prevents him from obtaining employment with a law enforcement agency and will adversely impact him in future court proceedings. Because the protective order may impact Laudente in the future, we exercise our discretion to consider the merits of his appeal. Brittany did not file a respondent's brief in this case and did not respond to our request for a letter brief on the issue of whether the appeal is moot.

Laudente also requested that we take judicial notice of: (1) an Amended Order of Termination and Charges from the San Diego County Sheriff's Department, which terminated Laudente's employment as a deputy sheriff, and (2) the County of San Diego Civil Service Commission's decision affirming his termination. Because Brittany did not respond to Laudente's appeal or oppose the request for judicial notice, Laudente's request for judicial notice is granted.

### II. *Standard for Protective Order*

Laudente argues the trial court erred in basing the restraining order on Brittany's apprehension of future abuse rather than on the proper objective standard of whether her safety would be jeopardized absent the order. We reject this argument.

4

In determining whether to issue a permanent DVPA order, "the court shall consider whether failure to make any of these orders may jeopardize the safety of the petitioner and the children for whom the custody or visitation orders are sought." (§ 6340, subd. (a).) While *renewal* of a DVPA protective order requires a showing that the petitioner has a "[r]easonable [a]pprehension of [f]uture [a]buse" (*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1287-1290), section 6340 "permits the issuance of a protective order . . . *in the first instance*, if 'failure to make [the order] may jeopardize the safety of the petitioner.'" (*In re B.S.* (2009) 172 Cal.App.4th 183, 193-194, italics added.)

The trial court has broad discretion in determining whether to grant a domestic violence restraining order. (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420; *Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1505.) Accordingly, we review the trial court's grant of a restraining order for abuse of that broad discretion, which occurs only if the court's ruling exceeds the bounds of reason, fails to apply correct legal standards, or is without substantial support in the evidence. (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1265 (*S.M.*); *Gonzalez v. Munoz*, at p. 420.)

Here, to support his argument that the trial court employed an incorrect standard to issue the restraining order, Laudente points to the trial court's statement that Brittany met her burden of proof to show Laudente's "pattern of conduct including issues of substance and verbal abuse has resulted in a *reasonable fear for her personal safety*." Laudente contends the trial court's statement establishes that it used an

5

improper standard of whether Brittany had a reasonable apprehension of future abuse rather than the proper standard of whether failure to issue the restraining order would jeopardize her safety. Laudente raised his concern with the trial court in a new trial motion. The trial court explained that the purpose of its statement regarding Brittany's "reasonable fear" for her personal safety was to express that although her sexual assault allegations were insufficient, her concerns about "substance abuse and so forth w[ere] credible" and Brittany had a reasonable fear based on those findings.

We are not convinced that the court's statement that Brittany met her burden to show she had "reasonable fear for her personal safety" established that the trial court utilized an improper standard to grant the restraining order. Even assuming error, however, it was harmless. (See *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1292 [appellate court may conclude trial court's failure to apply proper standard for renewal of a DVPA restraining order constitutes harmless error].) The evidence established by a preponderance of the evidence that Brittany's safety would be jeopardized absent the order. (*Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 137 [In determining whether to grant a request for a restraining order under the DVPA, the trial court applies the preponderance of the evidence standard of proof.].)

The evidence showed that Laudente repeatedly threatened to throw Brittany down the stairs to cause a miscarriage or her death. While Brittany recanted her statement to a Family Court Services counselor that Laudente had actually pushed her down stairs, there was some evidence in the record that Laudente perpetrated physical

6

violence against Brittany. Specifically, in addition to the incident regarding being pushed down the stairs, Brittany reported to the Family Court Services counselor that Laudente had previously choked her during intimate contacts. Brittany also stated in her sworn declaration that Laudente had been violent with her. Further, Laudente committed physical acts of aggression against Brittany's dog, one of the parties' daughters, and Brittany's mother.

While not overwhelming, in light of this evidence, the trial court could have reasonably concluded that Brittany's and her children's safety would be jeopardized absent the order.

### III. *Finding of Past Abuse*

Laudente argues the trial court erred in issuing the restraining order without a finding of past abuse. Specifically, he contends the trial court based its order on "verbal abuse" which did not rise to the level of abuse required for a restraining order as it was tantamount to "badgering" or "name calling." We disagree.

Under the DVPA, a court may issue a protective order to enjoin specific acts of abuse. (§ 6218.) Section 6300 provides: a restraining order may be issued if an affidavit or, if necessary, an affidavit and any additional information shows, to the satisfaction of the court, "*reasonable proof of a past act or acts of abuse*." (See *S.M.*, *supra*, 184 Cal.App.4th at p. 1264.) "'[A]buse'" means "(1) Intentionally or recklessly to cause or attempt to cause bodily injury[;] [¶] (2) Sexual assault[;] [¶] (3) To place a person in reasonable apprehension of imminent serious bodily injury to that person or

7

to another[; or] [¶] (d) To engage in any behavior that has been or could be enjoined pursuant to Section 6320." (§ 6203.)  The behavior outlined in section 6320 includes threats and harassment. (§ 6320.)

Here, Laudente relies on *S.M.* to support his argument.  That case involved parents fighting over custody of their minor child. (*S.M.*, *supra*, 184 Cal.App.4th at p. 1254.)  The mother and father engaged in an argument regarding the mother's intention to take the child out of state. (*Ibid.*)  The mother alleged that while she was in bed, the father tore the bed covers off of her, called her names, and threatened to kill her. (*Id.* at pp. 1254, 1258.)  The trial court specifically refused to find the father made a death threat and thus, based the restraining order on what it referred to as "badgering." (*Id.* at p. 1265.)  On appeal, this Court held that the father's "badgering" did not constitute "conduct that placed [the mother] in reasonable fear of serious bodily injury or that he engaged in a type of behavior identified in section 6320." (*Ibid.*)

Laudente claims that like *S.M.*, the trial court in this case erred in issuing the restraining order because it specifically found the video evidence did not support Brittany's claim of sexual assault and the trial court's finding of "verbal abuse" was nothing more than "badgering" and "name calling."  We do not agree with Laudente that his case is similar to *S.M*.  Although the trial court found the video evidence was insufficient to support Brittany's sexual assault claim, the evidence of "verbal abuse" in this case went beyond "badgering."  Instead, the evidence supports issuance of a restraining order based on behavior identified in section 6320.

The DVPA's definition of abuse includes more than physical or sexual assault. (§§ 6203, 6320.)  Under section 6320, "abuse" includes threats and harassment.  In this case, the record contained evidence that Laudente repeatedly threatened Brittany that if she got pregnant, he would throw her down the stairs to cause a miscarriage or her death.  Moreover, Brittany stated that in addition to threatening violence, Laudente had substance abuse problems, called her names and "ha[d] been violent with [her] and [her] dog and [her] mother."  Based on the foregoing, we conclude the trial court did not abuse its discretion in issuing the restraining order as the evidence, although minimal, established "abuse" justifying the order.  (§§ 6203, 6320.)

## IV. *Protected Persons*

Laudente argues the trial court erred in naming the parties' children as protected persons under the restraining order.  We disagree.

In determining whether to issue a permanent DVPA order, "the court shall consider whether failure to make any of these orders may jeopardize the safety of the petitioner and *the children for whom the custody or visitation orders are sought*." (§ 6340, subd. (a).)  "'"[D]omestic violence in the same household where children are living . . . is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it."  [Citations.] . . . Further, . . . '"[b]oth common sense and expert opinion indicate spousal abuse is detrimental to children."'"  (*In re R.C.* (2012) 210 Cal.App.4th 930, 941.)

9

Here, Laudente argues the trial court erred in naming the children as protected persons under the restraining order because Brittany did not allege child abuse and the court did not make any express findings or give an explanation as to why the children were protected under the order. Laudente cited no authority requiring a trial court to provide an explanation for including children in a protective order. Further, contrary to Laudente's contention, Brittany expressed concern for the physical safety of the children and, on one occasion, Laudente spanked their daughter so hard that it left a mark that stayed on her all day. Based on this evidence, the trial court did not abuse its discretion in including the parties' children as protected persons under the restraining order.

V. *Statement of Decision*

A. Additional Background

After the trial court issued its Findings of Fact and Conclusions of Law, Laudente "Requested Corrections, Changes and Objections to Court's Findings of Fact and Conclusions of Law." He contended: (1) the court's finding that Brittany met her burden of proof for the restraining order was inconsistent with its finding that she did not meet her burden of proof on her sexual assault allegation, (2) the court's finding that he engaged in a pattern of abuse was inconsistent with Brittany's assertions and the evidence, (3) there was no basis to include the parties' children as protected persons under the order, and (4) the court should grant him an exemption to the firearm restriction in the restraining order because he was required to carry a firearm

10

while on duty as a deputy sheriff. In response to Laudente's request, the trial court directed Laudente to prepare a statement of decision pursuant to the court's findings of fact and conclusions of law. One day later, the court issued the restraining order.

B. Analysis

Laudente argues the trial court erred in failing to comply with the statement of decision process. This contention fails.

"The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision." (Code Civ. Proc., § 632.) Thus, a trial court may make findings on only those issues specified (*Harvard Investment Co. v. Gap Stores, Inc.* (1984) 156 Cal.App.3d 704, 709-710, fn. 3); absent such a specification, a party is deemed to have waived the right to object to the trial court's failure to do so (*City of Coachella v. Riverside County Airport Land Use Com.* (1989) 210 Cal.App.3d 1277, 1292-1293). Where, as here, a trial lasts for more than one day, a party has ten days after the court announces its tentative decision to request a statement of decision. (Code Civ. Proc., § 632.)

Laudente has not shown the trial court's failure to issue a written statement of decision prejudiced him. He claims that the trial court's order was inconsistent with the evidence and had it "[f]ollow[ed] the statement of decision process to its conclusion [the trial court] could perhaps have corrected [its] errors and prevented the permanent restraining order . . . issued against [him]." This argument misconstrues the purpose of a statement of decision.

11

A statement of decision must explain the factual and legal basis for the court's decision regarding the principal controverted issues at trial (*In re Cheryl E.* (1984) 161 Cal.App.3d 587, 599); it does not need to specify the particular evidence considered by the trial court in reaching its decision (*Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1125). Additionally, a statement of decision need only state ultimate rather than evidentiary facts "because findings of ultimate facts necessarily include findings on all intermediate evidentiary facts necessary to sustain them." (*In re Cheryl E.*, at p. 599.)

Here, other than in regard to the firearm restriction, Laudente is not complaining about omitted findings on principal controverted issues at trial; rather, he is complaining that the trial court erred in its findings. The trial court concluded that Laudente engaged in a pattern of abuse sufficient to justify a restraining order protecting Brittany and the parties' children. The court's findings of fact and conclusions of law adequately disposed of all the basic issues in the case except the firearm restriction.

In regard to the firearm restriction, the parties subsequently stipulated and the court ordered that the restraining order be modified to permit Laudente to possess a firearm during his work hours. The stipulation and order were consistent with section 6389, subdivision (h), which permits a court to grant an exemption of the firearm restriction in a protective order to allow a peace officer to possess a firearm while on duty.

Despite the stipulation and order amending the restraining order, the San Diego County Sheriff's Department terminated Laudente's employment in part because the order prohibited him from carrying a firearm while *off duty*. "In any case involving a peace officer who as a condition of employment and whose personal safety depends on the ability to carry a firearm, a court may allow the peace officer to continue to carry a firearm, either on duty or off duty, if the court finds by a preponderance of the evidence that the officer does not pose a threat of harm. Prior to making this finding, the court shall require a mandatory psychological evaluation of the peace officer and may require the peace officer to enter into counseling or other remedial treatment program to deal with any propensity for domestic violence." (§ 6389, subd. (h).)

We need not consider whether the trial court should have made a finding in a statement of decision regarding Laudente's ability to carry a firearm while on duty as the parties stipulated and the court subsequently ordered that exemption. To the extent that Laudente is claiming the trial court should have made a finding regarding his ability to possess a firearm while *off duty*, he did not make that request in the trial court. Specifically, in his request for a statement of decision, Laudente did not request that the trial court make a finding by a preponderance of the evidence that he does not pose a threat of harm such that he could carry a firearm *off duty*. (§ 6389, subd. (h).) Instead, he only requested that the court grant the firearm exemption allowing him to carry his firearm while *on duty*. By failing to request specific findings allowing him to carry a firearm off duty, Laudente waived the right to object to the trial court's failure

13

to make such a finding (*City of Coachella v. Riverside County Airport Land Use Com.*, *supra*, 210 Cal.App.3d at pp. 1292-1293).

Based on the foregoing, we reject Laudente's claim of error in regard to the trial court's alleged failure to comply with the statement of decision process.

DISPOSITION

The order is affirmed.  Respondent is entitled to costs on appeal.


McINTYRE, J.

WE CONCUR:

BENKE, Acting P. J.

HUFFMAN, J.

14