[Civ. No. 32836.   Second Dist., Div. Four.   Aug. 21, 1969.]

IVY BAKER PRIEST, as State Treasurer, Plaintiff and Appellant, v. HOUSING AUTHORITY OF THE CITY OF OXNARD, Defendant and Respondent.

Thomas C. Lynch, Attorney General, and Edward M. Belasco, Deputy Attorney General, for Plaintiff and Appellant.

Heily & Blase and Neil D. Heily for Defendant and Respondent.

DUNN, J.—Appellant's petition for a writ of mandate was denied by the superior court which also discharged an alternative writ. This appeal follows.

Following World War II, respondent, Housing Authority of the City of Oxnard, took over for low cost housing purposes a wartime-built housing facility located on a 30-acre tract known as "Dale Park" in the City of Oxnard. There were 250 small dwellings on the tract, 80 of them consisting of 2 units, the remainder being 4-unit structures. All rested on concrete footings. There were blacktop-surfaced streets and concrete gutters, curbs, sidewalks and driveways. Underground there were sewerage, water, electric and gas pipes. The dwellings had not been constructed to meet building code requirements and respondent had contemplated that ultimately they would be torn down.

Respondent Housing Authority offered to enter into a public works contract with respondent Lawrence Bordan[1] and on March 26, 1965, Bordan signed an instrument entitled "Bid Proposal For Demolition And Restoration of Dale Park," which bid was approved by the authority commissioners on April 8, 1965. All buildings on the property were to be removed by burning or otherwise ". . . and the premises made ready for demolition work no later than Thursday, April 1, 1965." The bidder was not to do this part of the work; the houses were burned down by the local fire department which used the opportunity as training for its personnel.[2]

[1]Bordan was not named in the petition filed below but, nevertheless, appeared in place of "Doe X" and filed his answer as a "friend of the court." He has not appeared on this appeal and whenever the term "respondent" is used herein it will refer to the Housing Authority, only.

[2]The contract required of Bordan the following: "2. *Scope of work to be performed*: A. Remove from premises all surface and above-surface materials, including concrete, blacktop, and debris. This material is in the form of pavement, curbs, gutters, sidewalks, foundations, piers, trees, shrubs, clothes poles, etc. B. Underground pipe up to a depth of three feet and any other foreign material determental [*sic*] to farm operation shall be removed to the same depth." and "3. *Method of removal, demolition, and restoration*. As described in number 2, above, everything above and below surface must be removed to satisfaction of the Housing Authority and the Hobson Estate (owner of the land). All buildings will be removed by burning or otherwise and the premises made ready for

Shortly after Bordan began work a local labor union claimed he was not paying the prevailing wage rates, as required on public works contracts, and picketed the job. An amendment to the demolition contract was thereafter executed, setting forth hourly rates to be paid workmen "in accordance with California Labor Code."

On August 12, 1965, the California Division of Labor Law Enforcement issued to respondent a temporary stop order, based upon a complaint Bordan was in violation of the public works law (Lab. Code, § 1720 et seq.). Pursuant to Labor Code, section 1727 the division requested that respondent withhold from Bordan all monies due, pending further investigation by the division. On August 26, 1965, an amended temporary stop order was served on respondent asking that the sum of $2,500 be withheld from Bordan pending investigation, other monies being released. Bordan's work for respondent was completed October 8, 1965, and respondent's notice of completion was recorded October 18, 1965.

Respondent had withheld the $2,500 as requested and Bordan did not file suit against it within the 90-day period specified in Labor Code, sections 1731, 1732, 1733. After expiration of that period, and pursuant to Labor Code, section 1730, the division served on respondent a demand that it transmit the $2,500 withheld to appellant herein, the State Treasurer. Respondent refused to comply and appellant sought a writ of mandate.

In the trial court and here, respondent justified its refusal to transfer the funds on three grounds, all of which the trial court found to be true, namely: (1) that the contract did not involve "public works"[3] as defined in Labor Code, section 1720, for which reason the subsequent sections of the code were inapplicable; (2) mandamus cannot be used to control a

---

demolition work no later than Thursday, April 1, 1965. It is suggested that all materials left at the surface or above the surface be removed as the first order of business followed by the removal of underground materials. Blueprints or plans showing layout of underground pipe will be given the successful bidder to be used as a guide in removing all such materials. This action will be followed by criss-cross ripping and a device should be used to bring objects to the surface that could otherwise be left in the soil as a hazard. The next step will be to bulldoze from high to low spots throughout the thirty acres, particularly where streets and service drives had been installed. The job will be accepted as complete when the surface has been rough-graded to a general-level condition. Additional work will be performed by others, including the use of a land plane for final smoothness."

[3]Curiously, respondent's Answer To Petition For Writ Of Mandate admits this was a "public works" contract but denies that it called for demolition, a somewhat contradictory position.

discretionary act and respondent exercised its ''discretionary power'' in deciding that the contract did not come within the purview of the Labor Code; and (3) respondent withheld the $2,500 only pursuant to section 1190.1, subdivision (c) of the Code of Civil Procedure, representing reasonable litigation costs which respondent has and will incur.

## I. *Is Mandamus Inappropriate?*

■ Whether the work called for by the contract involved ''public works'' is a matter of interpreting Labor Code, section 1720 and respondent could not, under the guise of ''discretion,'' determine the work was outside the scope of the Labor Code. Interpretation or construction of a statute is a matter of law; not the exercise of discretionary authority. Mandamus is a proper remedy. *Palmer* v. *Fox* (1953) 118 Cal.App.2d 453 [258 P.2d 30]. We conclude the trial court's contrary finding is erroneous.

## II. *Was Respondent's Withholding of The $2,500 Properly Based On The Law Of Mechanics' Liens?*

■ The trial court's finding that respondent could withhold the money under Code of Civil Procedure, section 1190.1, subdivision (c), likewise is unfounded. That section relates to mechanics' liens. Appellant was not a person mentioned in Code of Civil Procedure, sections 1181 or 1184.1 and such status is necessary under its own requirements, before rights may be acquired under Code of Civil Procedure, section 1190.1. The rules relating to mechanics' liens have no application to the present matter.

## III. *Was The Contract One For Public Works?*

■ We now come to the chief point of contention between the parties, respondent urging that no ''public works'' contract is involved and appellant taking the opposite stance. Labor Code, section 1720 defines public works as meaning (so far as here pertinent) : ''construction, alteration, demolition or repair work done under contract and paid for in whole or in part out of public funds. . . .'' Preliminarily, we note there is no contention that ''public funds'' were not used in payment.

Labor Code, section 1770 et seq. requires that the prevailing rate of wages be paid on public work and a contractor is required to pay not less than such prevailing wage. Labor Code, section 1775 provides that the contractor may suffer a penalty for each instance of under-payment. Because Bordan was accused of numerous instances of failing to pay the required

minimum wage he was charged a penalty of $2 500. His failure to file suit precluded Bordan from any relief. Labor Code, section 1730 requires that all sums withheld under such circumstances be paid to the State Treasurer after a contractor's right to complain has expired. We can find no legitimate excuse for respondent's refusal to pay appellant and no basis for the trial court's denial of mandamus.

Though the bid proposal uses the term "demolition" respondent contends that the work Bordan actually did was not demolition but was "clean-up" in nature and does not, therefore, fit the statutory definition of public works. The facts are not in dispute. After the dwellings were burned down by the fire department the contractor used a tractor having a draw bar and 36-inch ripper-tooth to remove the pipes below the ground and used a deisel-driven shovel to uproot and remove asphalt roadbeds, concrete curbs and sidewalks, driveways and the cement footings. The contract required that he: "Remove from premises all surface and above-surface materials, including concrete, blacktop, and debris. This material is in the form of pavement, curbs, gutters, sidewalks, foundations, piers, trees, shrubs, clothes poles, etc. . . . Underground pipe up to a depth of three feet and any other foreign material determental [sic] to farm operation shall be removed to the same depth." A skiploader was used to level the land and fill up holes. The resulting debris was trucked away by Bordan.

Respondent contends that there was no "demolition" within the meaning of the Labor Code and that the parties did not contemplate demolition but only the removal of debris and a clearing of land so as to make it usable for farming. Both appellant and respondent discuss the intention of the parties. But we are not here concerned with the meaning attached by the parties to the term "demolition" but only with the nature of the work done. Labor Code, section 1720 simply defines "public works" as "construction, alteration, demolition or repair work done under contract."

The word "demolition" is not defined in the code nor has it previously been interpreted by court decision so far as we can discover. Nowhere does section 1720 refer to demolition of "structures" or anything else, either above or below ground. Appellant and respondent each draws our attention to definitions of "demolish" and "demolition" appearing in dictionaries, law digests and in the opinions of courts of sister states, none of which deals specifically with the meaning of

the word as used by our Legislature in this particular code section. If, as apparently contended by respondent, one can demolish only that which has been constructed above ground, then the word is to be given a limitation not spelled out by the Legislature. As one thinks of "construction" one ordinarily considers the entire process, including construction of basements, foundations, utility connections and the like, all of which may be required in order to erect an above-ground structure. In contrast "destruction" involves tearing down that which has been constructed. We are given no persuasive reason to believe the term "demolition" was not used here in a similar sense. Bordan was required by his agreement to tear up and remove things previously constructed. Whether they were on the surface or below ground seems to us immaterial. No reason appears to exclude Bordan's work from the term "demolition" as used in Labor Code, section 1720.

We also note that entirely ignored by both parties is the word "alteration" appearing in section 1720. To "alter" is merely to modify without changing into something else. While, in connection with a building, one ordinarily thinks of "alteration" as being a modification or addition to it, such a limited meaning has not been here provided by the Legislature. The section does not refer to alteration of a "building" or "structure"; for aught that appears the term may, as well as not, apply to a changed condition of the surface or the below-surface.

The construction of section 1720 is a matter of law. Evidence Code, section 310, subdivision (a). Since the evidence regarding the work done under the contract was undisputed, the application of the statute to it is strictly a matter of law and not one of mixed law and fact. We are therefore at liberty to, and we do, disagree with the trial court and hold that the work was public work as defined in Labor Code, section 1720. It follows that respondent wrongfully withheld the money from appellant herein and that a writ of mandate should have been issued as requested in the trial court.

Judgment is reversed and the matter remanded to the superior court with directions to make findings and conclusions and to enter judgment not inconsistent with this opinion, which judgment shall order that a peremptory writ of mandate issue directing respondent to transfer the monies held by it to appellant.

Jefferson, Acting P. J., and Kingsley, J., concurred.