[No. E005492. Fourth Dist., Div. Two. May 25, 1989.]

CITY OF COACHELLA, Plaintiff and Respondent, v.
RIVERSIDE COUNTY AIRPORT LAND USE COMMISSION,
Defendant and Appellant.

1278

**COUNSEL**

Gerald J. Geerlings, County Counsel, Katherine A. Lind, Deputy County Counsel, Adams, Duque & Hazeltine, Richard R. Terzian and Cristina L. Sierra for Defendant and Appellant.

Richards, Watson & Gershon, William L. Strausz, Mitchell E. Abbott and William B. Rudell for Plaintiff and Respondent.

**OPINION**

**CAMPBELL, P. J.**—This case involves a dispute between a local airport land use commission and a city concerning the commission's

(non)compliance with certain provisions of the State Aeronautics Act. (Pub. Util. Code, § 21001 et seq.)

Appellant (hereafter, the Commission) appeals from a judgment of the superior court granting the petition of respondent (hereafter, the City) for a writ of mandate to void, annul and set aside the Thermal Airport Land Use Plan which had been adopted by the Commission.

FACTS

On May 29, 1986, following two public hearings on the matter, the Commission adopted the Thermal Airport Land Use Plan (TALUP) pursuant to sections 21674, subdivision (c), and 21675, subdivision (a), of the Public Utilities Code. In very general terms, the TALUP purported to: (1) Identify those areas surrounding the Thermal Airport that were (or might be) subject to increased hazard or detriment occasioned by the operation of the airport; and (2) establish development standards and criteria for the identified areas so as to minimize the anticipated hazards and detriments. The City, although it had received notice of the public hearings concerning the adoption of the TALUP, chose not to participate in (or submit written materials for consideration at) either of the two hearings.

In November 1986, the Commission determined that certain tentative tract maps being processed by the City were inconsistent with the provisions of the TALUP. Pursuant to section 21676.5, subdivision (a), of the Public Utilities Code, the Commission communicated this determination to the City, which then promptly overrode the Commission's determination pursuant to that same statutory provision.

Shortly thereafter, on January 22, 1987, the Local Agency Formation Commission (LAFCO) of Riverside County met to consider an application to have a certain parcel of land annexed to the City. The parcel lay within the area identified by the TALUP as being influenced by the operation of the Thermal Airport. The Commission appeared at the LAFCO hearing to oppose the annexation on the ground that the proposed use of the parcel, under the land-use regulations of the City, would conflict with the TALUP. The LAFCO staff agreed with the position taken by the Commission, and the LAFCO denied the application for annexation.

On June 4, 1987, the Commission determined that the City's "general plan" was inconsistent with the requirements of the TALUP.

Four days later, on June 8, 1987, the City filed the substantive equivalent of the instant action in the Superior Court of Los Angeles County. Follow-

ing a determination by that court that an improper venue had been chosen for the action, the matter was refiled in Riverside County on August 19, 1987.[1]

The City's action sought a writ of "traditional" mandate (Code Civ. Proc., § 1085) to void, annul and set aside the TALUP. The gist of the City's attack on the TALUP was that it failed to meet the statutory requirements set forth in the Public Utilities Code for airport land use plans—in particular, the statutory requirement that such land use plans "shall include a long-range master plan that reflects the anticipated growth of the airport during at least the next 20 years." (Pub. Util. Code, § 21675, subd. (a).)

On March 28, 1988, following extensive briefing and oral argument, the trial court issued its memorandum of intended decision, which memorandum stated in pertinent part:

"A review of all of the competent evidence that has been presented to this Court has caused this Court to conclude that the Thermal Airport Land Use Plan ('TALUP') which has been adopted by the respondent does not satisfy the requirements of Section 21675(a) when read in conjunction with Section 21670. The 'TALUP' plan does not contain either a noise study or a safety study. It also fails to reflect the realistic growth of the Thermal Airport during the next twenty years. . . .

"For the reasons discussed above, this Court has concluded that the respondent has a mandatory duty pursuant to Section 21675 to formulate a long-range master plan that reflects the anticipated growth of the Thermal Airport during at least the next 20 years. (C.C.P. 1085.) The adoption of the so-called 'TALUP' plan does not satisfy that statutory requirement because it does not contain either a noise study or a safety study, among other deficiencies. The petitioner is a party who is beneficially interested in the performance of such duty by the respondent. (C.C.P. 1086) Substantial rights of the petitioner are at stake and the petitioner has no other plain, speedy or adequate remedy available in the ordinary course of law. (C.C.P. 1086.)

"Therefore, the petitioner is entitled to the issuance of a writ of mandate."

---

[1] Throughout the pendency of this matter, the parties have continued to engage in the same sort of statutory skirmishing which led in the first place to the City's filing the instant lawsuit. The Commission has continued to make findings of inconsistency between the TALUP and land-use actions undertaken by the City, and the City has continued to override those findings by a vote of its city council. We need not concern ourselves with these subsequent events to resolve the issues before us.

The Commission filed objections to this memorandum of intended decision, seeking a more detailed and definitive statement of decision by the trial court. The trial court declined to consider these objections on the ground that they had not been timely filed.

On April 12, 1988, the trial court formally adopted its memorandum of intended decision as its statement of decision under section 632 of the Code of Civil Procedure and entered judgment in favor of the City. On May 18, 1988, the writ of mandate issued.

The Commission has appealed from the judgment of the trial court and has raised the following issues and contentions (somewhat recharacterized for clarity and focus) on appeal:

(1) The City's action was barred by the applicable statute of limitations;

(2) The City's action was barred by the doctrine of laches;

(3) The trial court lacked jurisdiction to determine the matter inasmuch as the City failed to exhaust its administrative remedies;

(4) The trial court reviewed the TALUP under the wrong standard of review—which standard, if it had been used, would have led to a determination that the TALUP is valid;

(5) The trial court's statement of decision is deficient as a matter of law, and the trial court erred in not considering the Commission's objections thereto; and

(6) The writ issued by the trial court is excessively overbroad in that it undermines the legislative intent reflected in the statutory scheme at issue.

Additional facts will be referred to, as needed, in the discussion and analysis which follows.

## DISCUSSION

### I.

#### STATUTE OF LIMITATIONS

Section 65009, subdivision (c)(1), of the Government Code (a statutory provision found in division 1, "Planning and Zoning," of title 7, "Planning

and Land Use," of that code) sets forth a 120-day statute of limitations for all actions seeking "[t]o attack, review, set aside, void, or annul the decision of a legislative body to adopt . . . a general or specific plan." ■ The Commission argues that this statute of limitations bars the City's action because the adoption of an airport land use plan under the authority of the State Aeronautics Act is "analogous" to the adoption of a general or specific plan under the authority of the land-use planning and zoning authority of the Government Code. While we agree with the Commission that the two types of "adoption" are, in general terms, analogous, we do not agree that this analogical similarity compels the application of the 120-day statute of limitations of Government Code section 65009, subdivision (c)(1), to the matter at hand.

The Legislature has expressly declared that the purpose of Government Code section 65009 is "to provide certainty for property owners and local governments *regarding decisions made pursuant to this division*." (Gov. Code, § 65009, subd. (a)(3), italics added.) The decision to adopt an airport land use plan is *not* a decision made pursuant to division 1, title 7, of the Government Code.

If the Legislature had intended to apply the 120-day statute of limitations here in question to an airport land use plan, it presumably would have done so in clear and unambiguous language. It is beyond argument that the Legislature is at least aware of the interplay between airport land use plans and the type of planning directly contemplated by division 1, title 7, of the Government Code—section 65302.3 of the Government Code specifically addresses the need for consistency between local general plans and airport land use plans.

We are persuaded that the Government Code's reference to airport land use plans in section 65302.3, together with the lack of any such reference in section 65009, subdivision (c)(1), of that code, evinces a legislative intent that the 120-day statute of limitations found in section 65009, subdivision (c)(1), of the Government Code not apply to actions such as this one. This conclusion is entirely consistent with the limited pupose of Government Code section 65009 expressed by the Legislature in subdivision (a)(3) of that section.

The City's action was not barred by the statute of limitations set forth in Government Code section 65009, subdivision (c)(1).

## II.

## LACHES

 The Commission next argues that the City's action is barred by the equitable doctrine of laches.

 "[T]he affirmative defense of laches requires unreasonable delay in bringing suit 'plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay.' . . . Generally speaking, the existence of laches is a question of fact to be determined by the trial court in light of all of the applicable circumstances, and in the absence of manifest injustice or a lack of substantial support in the evidence its determination will be sustained. [Citations.]" (*Miller* v. *Eisenhower Medical Center* (1980) 27 Cal.3d 614, 624 [166 Cal.Rptr. 826, 614 P.2d 258], quoting *Conti* v. *Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, 359 [82 Cal.Rptr. 337, 461 P.2d 617].)

The trial court never directly addressed the issue of laches.[2] However, given the one-sidedness of the evidence of record on this issue, anything other than a decision adverse to the Commission on the issue of laches would have constituted a manifest injustice, a decision completely unsupported by any substantial evidence.

There was no unreasonable delay on the part of the City in seeking a writ of mandate, nor was there any acquiescence in or to the TALUP by the City. While the TALUP was adopted by the Commission in May of 1987, it (TALUP) was not *applied* to the City's actions until November 1987. It was not until the TALUP was applied that the City could be certain of the interpretation and effect to be given that plan by the Commission. Within two months of that first application of the TALUP to the City's actions, during the January LAFCO hearing to consider an annexation to the City, the City formally contested the validity of the TALUP. Within another six months, the City had filed the within petition for a writ of mandate. Given the complexity of the matters involved, this course of action by the City does not suggest either unreasonable delay or acquiescence.

---

[2] This, notwithstanding the fact that the Commission expressly directed the trial court's attention to the issue on at least two different occasions: (1) When asserting the issue as an affirmative defense in its response to the petition for a writ; and (2) when objecting to the trial court's memorandum of intended decision. (The trial court's failure to address this issue, and others, in response to the Commission's objections to the memorandum of intended decision is a matter taken up by us at a later point in this opinion.)

The doctrine of laches does not bar the City's writ action.

## III.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

 The Commission's next contention on appeal is that the City's action is barred by the City's failure to exhaust its administrative remedies—a failure which, if true, would deprive the trial court of jurisdiction to hear and determine the matter. (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 293 [109 P.2d 942, 132 A.L.R. 715].)[3]

However, the doctrine does not apply in those situations where no specific administrative remedies are available to the plaintiff. (*Rosenfield* v. *Malcolm* (1967) 65 Cal.2d 559, 566 [55 Cal.Rptr. 505, 421 P.2d 697].) In this case, we find that the City had no specific administrative remedy which was available to it and consequently hold that the City was not barred from pursuing the within action as a result of having failed to exhaust any such remedy.

The Commission argues that there were two administrative remedies available to the City: (1) The public hearings held by the Commission incident to the adoption of the TALUP; and (2) the provisions of article VIII, section 8.1, of the Rules of the Riverside County Airport Land Use Commission. Neither of these "remedies," though, provides an administrative remedy sufficient to call the doctrine here in question into play.

The mere fact that the City was entitled to attend the Commission's hearings on the adoption of the TALUP and submit materials relevant to that legislative act does not constitute an administrative remedy. An administrative remedy is provided only in those instances where the administrative body is required to actually accept, evaluate and resolve disputes or complaints. (*Rosenfield* v. *Malcolm, supra,* 65 Cal.2d 559.) The public hearings held by the Commission with regard to the adoption of the TALUP did not require that the Commission *do* anything in response to submissions or testimony received by it incident to those hearings. The position taken by

---

[3] We are aware of the recent appellate authorities which have characterized the failure to exhaust administrative remedies as a failure to complete a procedural prerequisite (an objection to which, if not timely raised, is waived) rather than as a failure to invoke the court's jurisdiction (which, of course, can be raised as an objection to judicial proceedings at any time). (See, e.g., *Green* v. *City of Oceanside* (1987) 194 Cal.App.3d 212 [239 Cal.Rptr. 470] and *Doster* v. *County of San Diego* (1988) 203 Cal.App.3d 257 [251 Cal.Rptr. 507].) However, inasmuch as the issue of a failure to exhaust administrative remedies *was* raised in a timely fashion in this case, we need not concern ourselves with an extended analysis of the topic.

the Commission on this issue is analogous to that taken (unsuccessfully) by the State Board of Optometry in the case of *Jacobs* v. *State Bd. of Optometry* (1978) 81 Cal.App.3d 1022 [147 Cal.Rptr. 225]. In that case, the state agency asserted that an administrative remedy was provided by a section of the Government Code which stated that " 'any interested person may petition a state agency requesting the adoption or repeal of a regulation. . . .' " This statutory procedure was held not to constitute an administrative remedy because there was nothing mandatory about its provisions. (*Jacobs,* at p. 1029.)

Nor is there any merit to the Commission's contention that its own rules provide an administrative remedy. Article VIII, section 8.1, of the Commission's rules states in pertinent part: "Meetings shall be scheduled by the Commission to consider matters relevant to its duties and responsibilities when requested by . . . a local planning agency . . . ." While it is true that this rule *does* contain a mandatory provision requiring the scheduling of meetings, it is also true that the rule *does not* mandate that anything be done as a result of such meetings. This duty to hold meetings amounts to nothing more than an obligation to exercise a general investigatory power. **(5)** As such, the rule does not rise to the level of an administrative remedy: "Our courts have repeatedly held that the mere possession by some official body of a continuing supervisory or investigatory power does not itself suffice to afford an 'administrative remedy' unless the statute or regulation under which that power is exercised establishes clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties." (*Rosenfield* v. *Malcolm, supra,* 65 Cal.2d at p. 566.)

■ Finally, we note that the Commission's own opening brief is inconsistent with respect to whether there was in fact an administrative remedy which the City was obligated to exhaust. In its opening brief, in arguing that the City's action was barred by the doctrine of laches, the Commission states that "There is no reason why City could not have filed this action immediately after the TALUP was adopted." If that is true, then it follows that there was no administrative remedy which the City was obligated to exhaust prior to initiating the instant action.

The City's action was not barred by a failure to exhaust an administrative remedy.

## IV.

### STANDARD OF REVIEW

Having disposed of the Commission's various arguments concerning alleged bars to the City's action, we turn now to those arguments by the

Commission which relate to the substance and merit of the dispute itself. First among these is the Commission's argument that the trial court utilized an inappropriate standard of review in deciding the matter, and that the application of the proper standard of review would have compelled a result favorable to the Commission.

The Commission goes on at great length to establish the legal principle that review of legislative or quasi-legislative acts by the judiciary is limited to determining whether the acts in question are arbitrary, capricious or without any evidentiary support. (*Langsam* v. *City of Sausalito* (1987) 190 Cal.App.3d 871, 878-879 [235 Cal.Rptr. 672].) The Commission then, pointing to portions of the trial court's statement of decision which indicate that the trial court inappropriately engaged in an independent review of the reasonableness of the TALUP, argues that the trial court committed reversible error by exceeding its judicial authority.

■■ While we agree with the Commission that the adoption of an airport land use plan, like the adoption of a general plan, is a legislative act (*Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 118 [109 Cal.Rptr. 799, 514 P.2d 111]), and agree further with the Commission that the judicial review of the reasonableness of a legislative act is governed by the above standard of review, we do not agree with the Commission that that standard of judicial review has any application to the basic issue being contested in this matter.

■ The "arbitrary, capricious or unsupported by evidence" standard of review applies to a review of the substantive *merit* of an administrative agency's quasi-legislative act—that is, to a review of whether the administrative agency " 'reasonably interpreted the legislative mandate.' " (*Credit Ins. Gen. Agents Assn.* v. *Payne* (1976) 16 Cal.3d 651, 657 [128 Cal.Rptr. 881, 547 P.2d 993], quoting *Ralphs Grocery Co.* v. *Reimel* (1968) 69 Cal.2d 172, 176 [70 Cal.Rptr. 407, 444 P.2d 79].) This case, on the other hand, involves the interpretation and construction of statutes, the provisions of the Public Utilities Code which are at issue here. Such interpretation and construction, of course, are purely matters of law. (*Priest* v. *Housing Authority* (1969) 275 Cal.App.2d 751, 754 [80 Cal.Rptr. 145].) Consequently, we are to exercise our own independent judgment in reviewing the matter, unfettered by any conclusions reached by the trial court, and any errors committed by the trial court with respect to the proper standard of review will be cured by our independent analysis of the issues. (*Lewin* v. *St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 386-387 [146 Cal.Rptr. 892].)

With the above in mind, we turn to an examination of the statutes themselves.

The provisions of the Public Utilities Code which are here in issue (and which will be referred to hereafter by section number only) are a part of article 3.5 ("Airport Land Use Commission," beginning with § 21670), of chapter 4 ("Airports and Air Navigation Facilities"), of the State Aeronautics Act (div. 9, part 1, Pub. Util. Code, beginning with § 21001). In section 21670, subdivision (a)(1), the Legislature declared it to be in the public interest "to provide for the orderly development of each public use airport in this state and the area surrounding these airports *so as to promote the overall goals and objectives of the California airport noise standards adopted pursuant to Section 21669 and to prevent the creation of new noise and safety problems.*" (Italics added.) In subdivision (a)(2) of that same section, the Legislature expressly set forth the purpose of article 3.5: "It is the purpose of this article to protect public health, safety, and welfare by *ensuring the orderly expansion of airports and the adoption of land use measures that minimize the public's exposure to excessive noise and safety hazards within areas around public airports* to the extent that these areas are not already devoted to incompatible uses." (Italics added.) It seems clear beyond argument, then, that quasi-legislative enactments of an airport land use commission have to bear some reasonable relation to the minimization of noise and safety hazards caused by the operation of public use airports within the jurisdiction of that commission.

Among the quasi-legislative enactments that are required of an airport land use commission is "an airport land use plan [prepared and adopted] pursuant to Section 21675." (§ 21674, subd. (c).) Section 21675, subdivision (a), in turn, mandates that "[e]ach commission shall formulate a comprehensive land use plan" and that "[t]he commission plan *shall include* a long-range master plan that reflects the anticipated growth of the airport during *at least the next 20 years.*" (Italics added.) Finally, article 3.5 gives airport land use commissions the authority to review the land use planning actions of surrounding local governmental entities for consistency with the airport land use plan. (§§ 21674-21676.5.)

 Having examined the TALUP in light of the above statutory scheme, we conclude that the TALUP simply does not meet the plain and mandatory requirements of Article 3.5 and, consequently, that it is not a valid "comprehensive land use plan" with which the Commission can demand consistency.

The "comprehensive land use plan" contemplated by section 21675, subdivision (a), is required to *include* a "long-range master plan." The inescapable import of this language is that the "long-range master plan" must be an identifiable "something" which is incorporated into the land use plan.

Further, the "long-range master plan" must encompass ("reflect") *at least* 20 years of anticipated growth by the airport. Presumably, this reflection of anticipated growth is to be focused on the impact of such growth on changes in noise and safety hazards. (That is, after all, the purpose underlying this entire legislative scheme.) There is *nothing* in the TALUP which meets these statutory requirements.

The Commission argues forcefully that the TALUP is based on studies that meet the requirements of article 3.5. The argument fails. First, the Commission can point to no "study" that contemplates the growth of the Thermal Airport to the year 2006 (20 years following the adoption of the TALUP). Second, the Commission can point to no provision of the TALUP that expressly includes or incorporates (or even refers to) a study that might be deemed a "long-range master plan."

As a matter of statutory interpretation, we conclude that the TALUP does not qualify under the requirements of article 3.5 as a valid "comprehensive land use plan."

V.

STATEMENT OF DECISION

This matter was "tried" to the trial court in an oral argument that lasted somewhat less than an hour. Of course, the bulk of the parties' advocacy was contained in the voluminous briefs which had been submitted to the trial court by the Commission and the City. As the oral argument was approaching its end, counsel for the City requested that the trial court issue a statement of decision pursuant to section 632 of the Code of Civil Procedure (hereafter cited by section number only). Counsel for the City did not specify any particular issues to be addressed by the statement of decision. Counsel for the Commission said nothing concerning a statement of decision.

Some time thereafter, the trial court issued its memorandum of intended decision. The Commission timely filed objections to that memorandum, raising basically the same issues which it has raised on this appeal. The trial court ruled that the objections had not been timely filed and refused to consider them. The trial court erred in calculating the timeliness of the Commission's objections, but that error does not require that we reverse the judgment.

It is axiomatic that a statement of decision is required only as to issues of fact decided by the trial court (§ 632: "upon the trial of a question

of fact by the court"), not as to issues of law. (*Enterprise Insurance Co.* v. *Mulleague* (1987) 196 Cal.App.3d 528, 539-540 [241 Cal.Rptr. 846].) Thus, the trial court's decision on the issue of the validity of the TALUP, being a decision on an issue of law (as we explained previously), was not required to be attended by a statement of decision. That being the case, any irregularity in the trial court's handling of the statement of decision with respect to that issue was nonprejudicial and does not require redress on our part. (Cal. Const., art. VI, § 13.)

The same analysis applies to the Commission's affirmative defenses concerning a statute of limitations and the exhaustion of administrative remedies. Inasmuch as the facts relating to these two defenses are undisputed, both of these defenses raise purely legal issues on this appeal. Consequently, we are unconcerned with the (in)adequacy of the trial court's statement of decision with respect to either of these defenses.

The Commission's affirmative defense of laches raises a different issue. As we noted in our previous analysis of the laches issue, the question whether a litigant has been guilty of laches in pursuing its remedies is ordinarily a question of fact for the trial court. Further, the record before us reveals that the Commission's objections to the trial court's memorandum of intended decision clearly and timely raised the trial court's failure to address the issue of laches. Nevertheless, we hold that the Commission's failure to specify laches as an issue to be addressed in the statement of decision operated as a waiver of the Commission's right to object to the trial court's failure to address the issue.

Section 632 is unmistakably clear that "The request for a statement of decision *shall* specify those controverted issues as to which the party is requesting a statement of decision." (Italics added.) In this case, *no* party specified *any* controverted issues to be addressed by the statement of decision.[4] Having failed to specify that the statement of decision should address the issue of laches, the Commission is deemed to have waived its right to object to the failure of the statement of decision to do so. *(Atari, Inc.* v. *State Bd. of Equalization* (1985) 170 Cal.App.3d 665, 674-675 [216 Cal.Rptr. 267], citing *Harvard Investment Co.* v. *Gap Stores, Inc.* (1984) 156 Cal.App.3d 704, 709-711 [202 Cal.Rptr. 891]. The *Harvard Investment* opinion is persuasive that a general, nonspecific request for a statement of

---

[4] The Commission cannot argue that its objections to the memorandum of intended decision operated as a specification of issues because section 632 requires that the request for a statement of decision (and, thus, the specification of issues) in a "short cause" matter such as this one be made "prior to the submission of the matter for decision."

decision does not operate to compel a statement of decision as to all material, controverted issues.)

For the reasons stated above, we conclude that any shortcomings that attended the trial court's issuance of its statement of decision do not constitute error requiring redress by this court.

## VI.

### THE WRIT

The Commission's final argument concerns the scope of the writ of mandate issued by the trial court. In particular, the Commission argues that the writ is overbroad and acts to undermine the legislative intent expressed in the provisions of the Public Utilities Code at issue here. While we do not share the Commission's concern with the writ which has been issued, we do have another concern with that writ.

The writ which was issued in this case went further than to merely void, annul and set aside the TALUP. The writ also required the Commission ". . . immediately upon receipt of this writ, to commence to prepare an airport land use plan for the Thermal Airport which includes a long-range master plan that reflects the anticipated growth of the airport during at least the next 20 years, . . ." By this provision, the trial court impermissibly sought to judicially compel the performance of a quasi-legislative act by an administrative body.

The constitutional doctrine of separation of powers precludes a court from ordering a legislative body "to pass a prescribed legislative act." (*Mandel* v. *Myers* (1981) 29 Cal.3d 531, 551, fn. 9 [174 Cal.Rptr. 841, 629 P.2d 935]; see *City of Sacramento* v. *California State Legislature* (1986) 187 Cal.App.3d 393, 396-399 [231 Cal.Rptr. 686].) Indeed, it has been opined by the California Attorney General that the *only* way to compel the adoption of an airport land use plan by an airport land use commission is through the utilization of the judicial procedures set forth in section 21679 of the Public Utilities Code, which procedures need not concern us in the context of this case. (71 Ops.Cal.Atty.Gen. 213 (1988).)[5] The opinions of the Attorney General are not binding on this court, of course, but

---

[5] We note, in response to the Commission's professed concern that the invalidation of the TALUP will lead to totally unfettered development in the vicinity of the Thermal Airport, that section 21679 provides a statutory/judicial procedure whereby to ensure that development in the vicinity of public use airports is consistent with sound standards of noise/safety engineering.

they are entitled to "great respect." (*Wenke* v. *Hitchcock* (1972) 6 Cal.3d 746, 751-752 [100 Cal.Rptr. 290, 493 P.2d 1154].)

The writ must act to set aside what the Commission has done incorrectly—but must not act to compel the Commission to do legislatively that which the statutes prescribe.

### DISPOSITION

The judgment is affirmed in all respects save one:

This matter is remanded to the trial court with directions that the writ of mandate heretofore issued in this matter be withdrawn and that another writ of mandate, consistent with the opinions expressed herein, be issued in lieu thereof.

McDaniel, J., and Dabney, J., concurred.