[Nos. E007431, E007432, E007433. Fourth Dist., Div. Two. Apr. 1, 1991.]

REDEVELOPMENT AGENCY OF THE COUNTY OF
RIVERSIDE et al., Petitioners, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
STEPHEN A. BIRBECK et al., Real Parties in Interest.

**COUNSEL**

Gerald J. Geerlings and William C. Katzenstein, County Counsel, Lee A. Vinocour, Deputy County Counsel, Stradling, Yocca, Carlson & Rauth, Paul L. Gale and Gary A. Pemberton for Petitioners.

No appearance for Respondent.

Kane, Ballmer & Berkman, R. Bruce Tepper, Jr., Marc J. Manason and Jean L. Harris for Real Parties in Interest.

**OPINION**

**HOLLENHORST, J.**—We issued an alternative writ of mandate in these three consolidated proceedings to address a single issue: Does the California

Community Redevelopment Law (Health & Saf. Code, § 33000 et seq.—hereinafter cited as the CRL and/or by statutory section number only) contain an administrative review procedure which must be pursued and exhausted before a party is entitled to challenge a redevelopment agency's adoption or amendment of a redevelopment plan in the courts? We originally concluded that such an administrative review procedure was contained in the CRL. We granted rehearing in this matter to further examine whether the CRL contains such an administrative review procedure that is applicable both to the adoption of an amendment to an existing redevelopment plan and to the adoption of an initial redevelopment plan. Upon rehearing, we conclude that the CRL does contain such an administrative review procedure that is applicable in both instances.

## FACTS

These consolidated proceedings concern three distinct redevelopment actions undertaken by the County of Riverside (which, together with the County's redevelopment agency and various of the County's officials, are the petitioners before us and are hereinafter collectively referred to as the County):

(1) The adoption of ordinance No. 677—an amendment to the Mead Valley redevelopment plan which served, in large part, to add some 715 acres to the Mead Valley redevelopment project area;

(2) The adoption of ordinance No. 675—a redevelopment plan for the Pedley/Rubidoux area; and

(3) The adoption of ordinance No. 676—a redevelopment plan for the Cabazon area.

Various interested parties (the real parties in interest before us—hereinafter referred to as the objectors) filed separate actions challenging the adoption of each of the above ordinances. These lawsuits challenged the County's determination that the areas encompassed by the respective ordinances were statutorily eligible for inclusion in a redevelopment project. The objectors brought their lawsuits pursuant to several statutory provisions: (a) section 33501 of the CRL; (b) the validation proceedings provisions of the Code of Civil Procedure (beginning with § 860)—which provisions are expressly made applicable to challenges to redevelopment actions by the aforementioned section 33501 of the CRL; and (c) sections 526 and 526a of the Code of Civil Procedure (authorizing, respectively, suits for injunctive relief and, more particularly, "taxpayer suits" for injunctive relief to restrain improper expenditures of public funds).

The County filed demurrers to each of the objectors' complaints, asserting that the objectors had failed to allege facts sufficient to constitute a cause of action in that they had failed to allege participation in the statutory hearing process set forth in the CRL as a part of the redevelopment plan adoption process. (See, in particular, §§ 33360-33364.) The underlying legal gist of the County's demurrers was the contention that the objectors' failure to participate in the statutory hearing process set forth in sections 33360-33364 constituted a failure to exhaust available administrative remedies, a jurisdictional prerequisite to bringing the legal challenges. (*City of Coachella* v. *Riverside County Airport Land Use Com.* (1989) 210 Cal.App.3d 1277, 1287 [258 Cal.Rptr. 795].) The objectors did not dispute the essential factual allegations made by the County with respect to their participation in the statutory hearing proceedings in question. The objectors did, however, dispute the applicability of the doctrine of exhaustion of administrative remedies (hereinafter referred to simply as the exhaustion doctrine) to their (non)participation in those proceedings. Further, the objectors argued that, even if the exhaustion doctrine did apply in general terms to the case at hand, the particular facts of the instant situation gave rise to certain recognized exceptions to the actual application of that doctrine.

The trial court overruled the demurrers, finding that the in rem nature of actions brought under the authority of the validation proceedings provisions of the Code of Civil Procedure (*ante*) rendered the exhaustion doctrine inapplicable in this case.

The County petitioned this court for extraordinary relief in all three of the lawsuits on the ground that the trial court, given the objectors' failure to exhaust administrative remedies, was proceeding in excess of its own jurisdiction. In light of the commonality of issues raised by the three petitions, we consolidated the three matters for all purposes. As noted above, we originally concluded that the objectors *had* failed to exhaust available administrative remedies in all three cases and that the County's petitions should be granted.

The objectors petitioned this court for a rehearing with respect to the one case which concerned an amendment to an existing redevelopment plan (the Mead Valley redevelopment action—before us as case No. E007431). We granted the petition, vacated our previous opinion and set the matter for argument.[1]

As we discuss below, we find that the exhaustion doctrine does apply to all three of the cases before us. Further, while we find that we are able to

---

[1] We vacated our previous opinion in its entirety and informed the parties that we would reissue an opinion, following rehearing, on all three of the consolidated cases.

dispose of certain of the objectors' contentions concerning exceptions to the exhaustion doctrine, we also find that the record before us does not allow us to completely dispose of all of the objectors' contentions concerning such exceptions. Therefore, we conclude that the writs petitioned for by the County shall issue as prayed for, and that the trial court shall be directed to vacate its orders overruling the County's demurrers and to reinstate those demurrers and place the same on for hearing.

Additional facts will be referred to, as needed, in the discussion which follows.

## DISCUSSION

### I.

### *The Exhaustion Doctrine as Applied to the Adoption of Initial Redevelopment Plans*

■ In this portion of the opinion, we discuss both the objectors' challenge to the adoption of the Pedley/Rubidoux redevelopment plan and the objectors' challenge to the adoption of the Cabazon redevelopment plan—before us, respectively, as case No. E007432 and case No. E007433.

The parties have expended considerable effort in attempting to characterize the County's adoption of the Pedley/Rubidoux and Cabazon redevelopment plans as being either "quasi-legislative" or "quasi-administrative" in nature. Indeed, the courts themselves are not in agreement on the characterization to be given this sort of governmental action. (Compare *Leach* v. *City of San Marcos* (1989) 213 Cal.App.3d 648, 656 [261 Cal.Rptr. 805], with *Redevelopment Agency* v. *City of Berkeley* (1978) 80 Cal.App.3d 158, 168 [143 Cal.Rptr. 633].) Determining which "label" to attach to such governmental action is not, however, crucial to resolving the issue before us. Whatever one wants to call an adoption of a redevelopment plan, the critical question is whether there exists an administrative procedure to challenge such an adoption. The exhaustion doctrine speaks to whether or not an administrative *remedy* for questionable governmental action exists, not to the character of the underlying governmental action itself. That is, whether or not a redevelopment plan *adoption* is "quasi-administrative" or "quasi-legislative," does the law provide for an administrative *challenge* to that adoption? In this case, the answer is clearly "yes."

Sections 33361, 33363 and 33364 of the CRL set forth detailed provisions relating to challenges to the adoption of redevelopment plans. These statutory provisions require that the adopting agency publish notice of public

hearings not only on the matter of the adoption of such plans but also on any *objections* to those plans (§ 33361), that the adopting agency evaluate and respond in writing to each such objection (including *findings and reasons* for the agency's response to each objection—see § 33363) and that the adopting agency make its written response to the objections within a fixed time period (§ 33364). Further, the law is clear that a legislative body is not free to proceed to the actual adoption of a redevelopment plan until such time as these hearing/analysis/conclusion proceedings are completed. (See § 33364.) These statutory provisions are precisely the sort of provisions that constitute an administrative remedy—that is, the sort of provisions that require a governmental body "to actually accept, evaluate and resolve disputes or complaints." (*City of Coachella* v. *Riverside County Airport Land Use Com.*, *supra*, 210 Cal.App.3d at p. 1287.)

■ Contrary to the trial court's conclusion in this matter, we are aware of no authority that limits the application of the exhaustion doctrine to certain types of actions. The exhaustion doctrine is a judicially created doctrine (notwithstanding the fact that it has now been codified in various statutes) that assures that certain prerequisites are met before an action is brought—irrespective of the *type* of action that is brought. (See, generally, *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 292-293 [109 P.2d 942, 132 A.L.R. 715].)

Consequently, we conclude that sections 33360-33364 of the CRL do provide an administrative remedy whereby to challenge the adoption of redevelopment plans such as the two here in question.

## II.

*The Exhaustion Doctrine as Applied to the Adoption of an Amendment to an Existing Redevelopment Plan*

■ In this portion of the opinion we discuss the objectors' challenge to the amendment to the Mead Valley redevelopment plan—before us as case No. E007431.

Sections 33360-33364 of the CRL, the statutory provisions constituting the administrative review procedure hereinabove discussed, are contained in article 5 of the CRL (beginning with § 33360), entitled "Procedure For Adoption Of Redevelopment Plans By The Legislative Body," and not in article 12 of the CRL (beginning with § 33450), entitled "Amendment Of Redevelopment Plans." It would thus appear at first glance that the administrative review procedure here in question applies only to the initial adoption of redevelopment plans and not to the adoption of amendments there-

to. Further analysis, however, reveals the administrative review procedure to be applicable in both instances.

Section 33354.6 states that "Where an agency proposes to amend a redevelopment plan which utilizes tax increment financing to add new territory to the project area, . . . the agency shall follow the same procedure, *and the legislative body is subject to the same restrictions as provided for in this article for the adoption of a plan*." (Italics added.) Inasmuch as (1) the Mead Valley redevelopment plan utilizes tax increment financing and (2) the proposed amendment to that plan which is here at issue serves primarily to add more territory to the redevelopment project area, section 33354.6 suggests that the County was obligated to utilize the adoption procedures set forth in sections 33360-33364 in adopting the Mead Valley redevelopment plan amendment and, thus, that the administrative review procedure set forth in those same statutory provisions was available to the objectors for mounting a challenge to the adoption of that redevelopment plan amendment.

The objectors have argued forcefully that section 33354.6 does *not* obligate the County to utilize sections 33360-33364 in adopting redevelopment plan amendments and, thus, that those statutory provisions did *not* provide them (the objectors) with an administrative review procedure to challenge the proposed amendment to the Mead Valley redevelopment plan. The objectors' argument is twofold in nature: (1) The very language of section 33354.6 itself contradicts any suggestion that it (§ 33354.6) is intended to impose the administrative review procedures of sections 33360-33364 on the adoption of amendments to redevelopment plans; and (2) section 33454 of the CRL expressly sets forth the procedure to be followed by legislative bodies in adopting amendments to redevelopment plans, contradicting any suggestion that the procedures set forth in sections 33360-33364 need be made impliedly applicable to the adoption of such amendments. As we discuss in greater detail below, we find neither of these arguments to be persuasive.

(1) *The Language of Section 33354.6.*

The objectors have pointed to the fact that section 33354.6 requires only that the adopting legislative body be bound by restrictions "as provided for *in this article* for the adoption of a plan" (italics added) and that sections 33360-33364 (the administrative review provisions) are *not* in the same article as section 33354.6—which section is contained in article 4 of the CRL, entitled "Preparation And Adoption Of Redevelopment Plans By The Agency." This argument, however, and notwithstanding its surface appeal, does not withstand close scrutiny.

■ We are aware, of course, that in interpreting the meaning of legislative provisions we are to begin with the plain meaning of the words of those provisions: "[I]f statutory language is ·'clear and unambiguous there is no need for construction, and courts should not indulge in it.'" (*Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 218 [188 Cal.Rptr. 115, 655 P.2d 317], quoting from *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].) ■ In this case, however, there *is* an ambiguity (albeit, a latent ambiguity) in section 33354.6's use of the phrase "the legislative body is subject to the same restrictions as provided for in this article for the adoption of a plan," which ambiguity requires that we further interpret and construe that section's meaning and application. In short, an ambiguity is created by section 33354.6's use of the above phrase because article 4 of the CRL, at the time section 33354.6 was adopted in 1976, *did not contain any restrictions on legislative bodies for the adoption of a redevelopment plan.*[2]

■ Given the latent ambiguity contained in section 33354.6, we must construe that section so as to give full implementation to what we perceive the Legislature's intent to have been in adopting the section—even if, in so doing, we do not adhere to a literal reading of the section's language: "[T]he primary rule of statutory construction, to which every other rule as to interpretation of particular terms must yield, is that the intention of the legislature must be ascertained if possible, and, when once ascertained, will be given effect, even though it may not be consistent with the strict letter of the statute." (*Marina Village* v. *California Coastal Zone Conservation Com.* (1976) 61 Cal.App.3d 388, 392 [132 Cal.Rptr. 120], quoting from *Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 802 [151 P.2d 505, 157 A.L.R. 324], internal quotations omitted.) ■ Thus, we turn to ascertaining the Legislature's intent in adopting section 33354.6.

---

[2] Subsequently, article 4 of the CRL was amended to contain at least one such restriction: Section 33333.4 now contains a requirement that legislative bodies adopt an ordinance to bring "old" redevelopment plans into conformity with more recently enacted financing provisions. Of course, the fact that such a statutory provision now exists is of no help in construing the original meaning of section 33354.6.

The objectors have argued that the same legislative enactment that created section 33354.6 (Stats. 1976, ch. 1337) also established certain "restrictions" on legislative bodies to which section 33354.6 must be understood as referring. (In particular, the objectors have referred to the fact that chapter 1337 added sections 33333.2 and 33334.1 to the CRL.) The objectors' argument is flawed—and the flaw consists of the objectors' having confused (a) *substantive* restrictions placed on redevelopment agencies concerning the content of redevelopment plans (or amendments thereto) being prepared by those agencies with (b) *procedural* restrictions placed on legislative bodies concerning the procedures to be followed in adopting redevelopment plans submitted to them (the legislative bodies) by redevelopment agencies. Sections 33333.2 and 33334.1 do not place procedural restrictions on legislative bodies with respect to "the adoption of a plan." Rather, sections 33333.2 and 33334.1 require that certain substantive provisions be contained in any redevelopment plan (or amendment thereto) being prepared, and then approved, by a redevelopment agency prior to its (the plan's) being submitted to the appropriate legislative body for adoption.

Even a cursory reading of section 33354.6 makes clear the Legislature's intent, in adopting that section, to focus on the *procedural* safeguards to be imposed on the inclusion of new territory in existing redevelopment project areas by the simple expedient of amending the existing redevelopment plan. Such a focus is well needed: Insofar as the newly included territory is concerned, the adoption of such an amendment is tantamount to the adoption of an initial redevelopment plan. In light of this apparent focus, the only reasonable interpretation that can be given to section 33354.6's requirement that a legislative body be "subject to the same restrictions as provided for in this article for the adoption of a plan" is that the Legislature intended legislative bodies to be subject to the restrictions contained in article 5 of the CRL (in particular, §§ 33360-33364) when adopting an amendment to an existing redevelopment plan to add new territory to the redevelopment project area in question. This interpretation is supported and bolstered by several factors:

(a) Given the grammatical context in which the phrase "in this article" is used in section 33354.6, the application of that phrase to the restrictions placed on legislative bodies is easily explained as a simple drafting oversight. In attempting to use only one sentence to require both that "the agency shall follow the same procedure" and that "the legislative body is subject to the same restrictions" in adopting the type of redevelopment plan amendments here in question, the Legislature could have easily overlooked the fact that agency procedures *are* "provided for in this article" while legislative restrictions *are not*.

(b) Section 33360 of the CRL requires that the adopting legislative body "consider the redevelopment plan submitted by the agency." Inasmuch as redevelopment agencies are required by section 33354.6 to use the same procedures in adopting and submitting amendments to redevelopment plans as those used in adopting and submitting initial redevelopment plans, consistent statutory construction requires that *"the* redevelopment plan" contemplated by section 33360 be construed to address agency submissions of both initial redevelopment plans and amendments to redevelopment plans.

(c) Contemporaneous legislative materials support our interpretation of section 33354.6.[3] In particular, the Legislative Analyst's review of the bill which eventually carried section 33354.6 into law contains the following statement: "Plan adoption procedures are to be followed by the legislative body (e.g., city council) whenever an existing agency proposes to: . . . add

---

[3] Under sections 459, subdivision (a), and 452, subdivision (c), of the Evidence Code, we take judicial notice of the legislative materials attached for reference to the County's answer to the objectors' petition for rehearing.

significant amounts of new territory to the existing project area." (Analysis of Assem. Bill No. 3674 (Montoya) by Legislative Analyst, Aug. 18, 1976.)

(2) *Section 33454.*

The objectors (1) point out that section 33454 expressly sets forth procedural requirements to be followed by legislative bodies in adopting amendments to existing redevelopment plans and (2) then go on to argue that the existence of section 33454's express requirements contradicts any suggestion that section 33354.6 need be "construed" as impliedly imposing the procedural requirements of sections 33360-33364 on legislative bodies with respect to the adoption of amendments to redevelopment plans.[4] We are not persuaded.

At the time section 33454 was adopted by the Legislature, 1963, it was clearly intended by the Legislature to apply to all adoptions of amendments to redevelopment plans by legislative bodies. In 1976, however, the Legislature adopted section 33354.6 and, in so doing, imposed the procedural requirements of sections 33360-33364 on legislative bodies adopting certain, limited types of amendments to existing redevelopment plans. We perceive no conflict between sections 33354.6 and 33454.

We conclude that the redevelopment plan adoption procedures which are imposed on legislative bodies by sections 33360-33364 of the CRL with respect to the adoption of initial redevelopment plans are also imposed, by section 33354.6 of the CRL, on legislative bodies with respect to the adoption of qualifying redevelopment plan amendments.[5] Consequently, we hold that the administrative review procedures set forth in sections 33360-33364 of the CRL (as discussed in pt. I of this opinion) were available to the objectors to challenge the County's adoption of the amendment to the Mead Valley redevelopment plan which is before us in case No. E007431, and that the exhaustion doctrine thus applies in this case.

III.

*Exceptions to the Exhaustion Doctrine*

Having concluded that the exhaustion doctrine does apply, in general terms, to the objectors' challenges to the three redevelopment actions here

---

[4] Section 33454 provides: "After receiving the recommendation of the agency concerning such changes in the plan, and not sooner than 30 days after the submission of changes to the planning commission, the legislative body shall hold a public hearing on the proposed amendment, notice of which hearing shall be published in a newspaper in the manner and at the times designated above for notice of hearing by the agency."

[5] By "qualifying" amendments, we mean those amendments of the sort that are encompassed by the express terms of section 33354.6.

in issue, we are left to address the objectors' contention that they fall within two recognized exceptions to that doctrine: (1) The "public interest" exception; and (2) the "futility" exception.

■ The public interest exception traces its existence to the case of *Environmental Law Fund, Inc.* v. *Town of Corte Madera* (1975) 49 Cal.App.3d 105 [122 Cal.Rptr. 282] and stands for the proposition that a private party is not necessarily precluded from challenging governmental action by a failure to exhaust an administrative remedy if the party is attempting to enforce rights which it holds as a member of the affected public, was not a party to the governmental proceedings and had not received notice of those proceedings. (49 Cal.App.3d at pp. 113-114.) This exception, while understandable from a "public policy" point of view, is clearly not applicable to this case. The objectors do not contend that the County failed to publish appropriate notice of its hearings on the adoption of the three ordinances here involved. Thus, the public at large (including the objectors) had ample opportunity to participate in the County's decisionmaking process. (See *Resource Defense Fund* v. *Local Agency Formation Com.* (1987) 191 Cal.App.3d 886, 895 [236 Cal.Rptr. 794].)

■ The "futility" exception is another matter. This exception recognizes that the exhaustion doctrine should not apply in those instances where the pursuit of administrative remedies is demonstrably futile. (See authorities cited in *Edgren* v. *Regents of University of California* (1984) 158 Cal.App.3d 515, 522 [205 Cal.Rptr. 6].) In these three cases, the trial court never had occasion to rule on whether it would have been futile for the objectors to have pursued their administrative remedies under sections 33360-33364 of the CRL. These cases must be remanded to the trial court to permit the parties to address this issue.[6]

---

[6] In our first opinion in these cases, we ourselves addressed the apparent merits of the objectors' argument that they fell within the futility exception to the exhaustion doctrine. On reconsideration, it seems to us to be the better course to permit the trial court to first address this argument. Whether or not the futility exception applies in these three cases may well involve the resolution of disputed factual matters (matters which may not have been fully developed on the record on appeal), a task to which the trial court is far better suited than this court. We do not wish to suggest or imply by this "change of course" (that is, by our having reconsidered our role in resolving whether the futility exception has application in these cases) any conclusion on our part as to how the trial court ought properly to rule on this issue. Our decision to remand the futility exception issue to the trial court is based solely on our reconsidered view as to the proper role of this court respecting the resolution of the issue.

On a related matter, we also do not wish to suggest or imply that upon remand the trial court should necessarily engage in an immediate *evidentiary* hearing to determine the applicability of the futility exception in these cases. These cases remain at the *pleading* stage of their existence. Our remand to the trial court is intended simply to place these three matters once again before the trial court so as to permit the County to test the objectors' complaints by demurrer with respect to the futility exception. It remains within the purview of the trial

## Disposition

In case No. E007431. The alternative writ hereinbefore issued shall be and hereby is discharged. The County's petition for a peremptory writ of mandate is granted and such writ shall and hereby does issue to the following effect: The trial court is hereby directed to vacate its order overruling the County's demurrer, to reinstate said demurrer and place the same on for hearing with respect to the applicability of the futility exception to the exhaustion doctrine (as hereinabove discussed) in the within matter, and to thereafter undertake such further proceedings as are not inconsistent with this opinion.

In case No. E007432. The alternative writ hereinbefore issued shall be and hereby is discharged. The County's petition for a peremptory writ of mandate is granted and such writ shall and hereby does issue to the following effect: The trial court is hereby directed to vacate its order overruling the County's demurrer, to reinstate said demurrer and place the same on for hearing with respect to the applicability of the futility exception to the exhaustion doctrine (as hereinabove discussed) in the within matter, and to thereafter undertake such further proceedings as are not inconsistent with this opinion.

In case No. E007433. The alternative writ hereinbefore issued shall be and hereby is discharged. The County's petition for a peremptory writ of mandate is granted and such writ shall and hereby does issue to the following effect: The trial court is hereby directed to vacate its order overruling the County's demurrer, to reinstate said demurrer and place the same on for hearing with respect to the applicability of the futility exception to the exhaustion doctrine (as hereinabove discussed) in the within matter, and to thereafter undertake such further proceedings as are not inconsistent with this opinion.

Dabney, Acting P. J., and McDaniel, J.,* concurred.

On May 1, 1991, the opinion was modified to read as printed above.

---

court to determine what, if any, further proceedings will be required subsequent to such testing.

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.